531 So.2d 632 (1988)
Gary MOAWAD
v.
STATE of Mississippi.
No. 57874.
Supreme Court of Mississippi.
September 14, 1988.
P.J. Townsend, Jr., Townsend, McWilliams & Holladay, Drew, for appellant.
Edwin Lloyd Pittman and Mike Moore, Attys. Gen., by Leyser Q. Morris, Sp. Asst. Atty. Gen., Jackson, for appellee.
Before ROY NOBLE LEE, ROBERTSON and SULLIVAN, JJ.
ROY NOBLE LEE, Chief Justice, for the court:
Gary Moawad was indicted, tried and convicted in the Circuit Court of Panola County March, 1976 Term, for murder less than capital and two (2) aggravated assaults. He was sentenced to life imprisonment in the custody of the Mississippi Department of Corrections on the murder conviction and to terms of twenty (20) years and five (5) years for the aggravated assaults, the sentences to run consecutively. *633 Through no fault of his own, Moawad's appeal was not properly perfected and, on February 26, 1986, this Court granted his petition for an out-of-time appeal. He has assigned five (5) errors in the trial below.

Facts
On November 13, 1975, E.O. Tubbs was shot and killed in his home. The cause of his death was a single gunshot delivered at close range with a .32-caliber revolver, to the back of his head. Death was instantaneous. Willodean Tubbs, decedent's wife, sustained a gunshot wound just below her right eye and son, Michael Tubbs, suffered multiple lacerations to his face and head.
Previous to the homicide and assaults, appellant and the Tubbs family, i.e. E.O. Tubbs, Willodean Tubbs, his wife, Michael Tubbs, son, and Kathleen Smith, daughter, became acquainted in 1965. At that time appellant and Kathleen Smith were attending Bible School in Tupelo, Mississippi, after which they began dating, and in May of 1965 were married. In 1969, appellant and Kathleen began experiencing marital difficulties. The couple separated in 1975, and Kathleen began divorce proceedings against him. Appellant had visited the Tubbs home in Sardis, Mississippi, regularly. Three children (sons) were born to the marriage of appellant and Kathleen and they also visited regularly with the grandparents.
On November 13, 1975, appellant and his youngest son, Paul, went to the Tubbs' home in Sardis, Mississippi. Mr. Tubbs, his wife Willodean, and his son, Michael, all were present. Appellant explained his visit by saying that he and Kathleen were reunited. According to Mrs. Willodean Tubbs, everything was calm and the conversation was normal. At the beginning of the visit they were in the living room and talked approximately forty (40) minutes.
The testimony of Mrs. Willodean Tubbs and Michael Tubbs and evidence for the State indicated that appellant took the child out to the fenced backyard and returned to the house and into the kitchen. E.O. Tubbs had left the living room and was sitting in a chair in the kitchen. When appellant entered the kitchen from the yard there was a shot heard by Willodean and Michael. Appellant then entered the living room with a .32-caliber Smith & Wesson revolver in his hand and shot Mrs. Tubbs, the bullet striking her just below the right eye and rendering her unconscious. Michael attempted to wrestle the pistol away from appellant, and, during the struggle, suffered lacerations to his face and head. Michael broke loose and ran to a neighbor's house for help. Appellant picked up the child from the backyard and drove directly to the North Mississippi Legal Services Office in Oxford, Mississippi, to speak with an attorney.
When Michael Tubbs returned home, his mother had revived and was bleeding from her eye. Mr. Tubbs' body was slumped in the chair where he had been seated in the kitchen. Patricia Hendricks, a neighbor of the Tubbs, testified that she responded to a knock at her door on November 13, 1975, and Mrs. Tubbs was standing outside covered with blood. She ran over to the Tubbs residence, entered the house, and saw Mr. Tubbs' body seated in a chair in the kitchen. There was nothing in his hands and she saw no firearms. She and Michael Tubbs removed the body from the chair and put it on the floor.
Marham Kozam, appellant's step-brother, testified that on November 13, 1975, appellant told him there was no hope for his marriage because Kathleen still wanted a divorce. Appellant was nervous and Kozam observed him place his .32-caliber pistol in a baby diaper. On November 13, 1975, he received a telephone call from appellant, who told him that he shot Mr. E.O. Tubbs. After the conversation, Kozam searched the house for appellant's pistol and was unable to find it. Dr. Arthur Boyd, a physician at North Panola Hospital, examined the Tubbs family.
Mr. E.O. Tubbs was pronounced dead on arrival at the hospital, and it was the opinion of Dr. Boyd that the cause of death was a gunshot wound to the "left oxipa [sic] *634 behind the ear."[1] Mrs. Tubbs sustained a gunshot wound just below the right eye. The bullet did not exit and remains lodged in Mrs. Tubbs' head. Michael Tubbs sustained a ragged laceration to the upper portion of his left cheek under the eye approximately two and one-half (2 1/2) inches long. A .32-caliber bullet was removed from Mr. Tubbs' head and was identified as having been fired from either a Smith & Wesson revolver or an INA.
Appellant testified in his own behalf, and, according to him, an argument ensued in the Tubbs home, he was attacked by E.O. Tubbs, and Michael Tubbs, and the gun fired during the struggles, resulting in the shooting of E.O. Tubbs and Mrs. Willodean Tubbs and that appellant struck Michael Tubbs with an ashtray during the struggle.

Law

I.

THE TRIAL COURT ERRED IN ALLOWING THE STATE TO TRY THE APPELLANT ON THREE (3) SEPARATE INDICTMENTS AT THE SAME TRIAL.
For the first time, on appeal, appellant contends that it was error for the lower court to allow the three (3) indictments to be consolidated in one trial. The record reflects that appellant made no objection to the consolidation of the charges and the assigned error is procedurally barred from review by this Court. It has been held consistently that the failure to make a contemporaneous objection at trial constitutes a waiver of any error subsequently assigned. Irving v. State, 498 So.2d 305 (Miss. 1986); Gates v. State, 484 So.2d 1002 (Miss. 1986); Gray v. State, 472 So.2d 409 (Miss. 1985). See also Wainright v. Sykes, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977). Accord: Pieratt v. State, 235 So.2d 923 (Miss. 1970); Tubbs v. State, 402 So.2d 830 (Miss. 1981); Walker v. State, 473 So.2d 435 (Miss. 1985); Ward v. State, 461 So.2d 724 (Miss. 1984).[2]
The assigned Error I is rejected.

II.

THE LOWER COURT ERRED IN GRANTING JURY INSTRUCTION S-3.

III.

THE LOWER COURT ERRED IN GRANTING JURY INSTRUCTION S-10.

IV.

THE LOWER COURT ERRED IN GRANTING JURY INSTRUCTION S-5.
The instructions relating to the above assigned errors follow:
Instruction S-3
The Court instructs the Jury that a mere denial by the defendant does not entitle him to an acquittal until such denial is so clear and convincing to enable each juror, when considering said denial with all the testimony, to form a reasonable doubt as to the guilt of the defendant.
Instruction S-5
The Court instructs the Jury that malice aforethought mentioned in the indictment may be presumed from the unlawful and deliberate use of a deadly weapon.
Instruction S-10
The Court instructs the jury that if you believe from the evidence that in this case the defendant made an aggravated assault in and upon the body of Mike Tubbs with a certain deadly weapon, to-wit: a pistol, without provocation, or without threat of great bodily harm to *635 himself, then it will be your sworn duty to find the defendant guilty as charged.
The record reflects that no objection was made to any of the three instructions set forth above. Therefore, the points are procedurally barred and are not properly before the Court for consideration. Rule 42, Miss.Sup.Ct. Rules. Lockett v. State, 517 So.2d 1317 (Miss. 1987); Gray v. State, 472 So.2d 409 (Miss. 1985); Billiot v. State, 454 So.2d 445 (Miss. 1984); Gilliard v. State, 428 So.2d 576 (Miss. 1983). Accord: Booker v. State, 449 So.2d 209 (Miss. 1984); Oates v. State, 421 So.2d 1025 (Miss. 1982); Gates v. State, 484 So.2d 1002 (Miss. 1986).
The assigned errors are rejected.

V.

THE LOWER COURT ERRED IN PASSING OVER THE FIRST ALTERNATE JUROR AND APPOINTING THE SECOND ALTERNATE JUROR TO REPLACE A REGULAR JUROR.
Appellant contends that the lower court improperly passed over the first alternative juror, Mrs. A.H. Wilson, and appointed the second alternate juror, D.M. Yount, to replace a regular juror who had become ill prior to the time the jury retired to consider its verdict. However, the record does not reflect this alleged replacement of a regular juror by an alternate:

The Court: All right, you've heard the conclusion of the presentation of the evidence, the arguments of counsel. I'm very grateful that we have not had any instances requiring the replacement of any member of the regular twelve of the panel, and I, at this time, express the gratitude of the court for the patience of the alternate jurors, who have sat here. They have concluded their duties, and I'm glad that they did not have to take their place on the regular panel. .. . Thank you for being here and you may now be excused from the box.

In Mason v. State, 440 So.2d 318 (Miss. 1983), the Court said:
We have on many occasions held that we must decide each case by the facts in the record, not assertions in the brief, however sincere counsel may be in those assertions. Facts asserted to exist must and ought to be definitely proved and placed before us by a record, certified by law; otherwise, we cannot know them.
440 So.2d at 319.
In absence of anything in the record appearing to the contrary, this Court presumes that the trial court acted properly. Vinson v. Johnson, 493 So.2d 947 (Miss. 1986); Fontaine v. Pickle, 254 So.2d 769 (Miss. 1971).
The assigned Error V is rejected.
The judgment of the lower court is affirmed.
AFFIRMED.
PRATHER, ROBERTSON, SULLIVAN, ANDERSON, GRIFFIN and ZUCCARO, JJ., concur.
DAN M. LEE, P.J. and HAWKINS, P.J., specially concur.
DAN M. LEE, Presiding Justice, specially concurring:
Because there was no objection to the three jury instructions given at Moawad's trial, I agree with the majority's opinion that Moawad is procedurally barred from bringing the instructions as error here on appeal. However, I would point out that had an objection been lodged, it would have been reversible error to have given these instructions.
Instruction S-10 reads:
The Court instructs the jury that if you believe from the evidence that in this case the defendant made an aggravated assault in and upon the body of Mike Tubbs with a certain deadly weapon, to-wit: a pistol, without provocation, or without threat of great bodily harm to himself, then it will be your sworn duty to find the defendant guilty as charged.
This instruction curtails the jury's consideration of a proper self defense instruction, as we recommended in our opinion in Robinson v. State, 434 So.2d 206 (Miss. 1983):
The Court instructs the jury that to make a killing justifiable on the grounds of self *636 defense, the danger to the defendant must be either actual, present and urgent, or the defendant must have reasonable grounds to apprehend a design on the part of the victim to kill him or to do him some great bodily harm, and in addition to this he must have reasonable grounds to apprehend that there is imminent danger of such design being accomplished. It is for the jury to determine the reasonableness of the ground upon which the defendant acts.
Id. at 207. See also Fairman v. State, 513 So.2d 910, 914 (Miss. 1987). Instruction S-10, as given in the present case, cuts out or conflicts with the jury's consideration of whether or not the danger to the defendant was either actual, present, or urgent, or whether or not the defendant had reasonable grounds to apprehend a design on the part of the victim to kill him or to do him great bodily harm, and, additionally, whether or not the defendant had reasonable grounds to apprehend that there was imminent danger of the design being accomplished. As such, this instruction should not be given.
Instruction S-3, which was also given in the present case, reads:
The Court instructs the jury that a mere denial by the defendant does not entitle him to an acquittal until such denial is so clear and convincing to enable each juror, when considering said denial with all the testimony, to form a reasonable doubt as to the guilt of the defendant.
Such an instruction has the effect of shifting the burden of proof to the defendant to prove his denial by clear and convincing evidence. This instruction undercuts the principle that the burden of proof is on the state to prove each element of the crime beyond a reasonable doubt. This burden of proof never shifts from the state, even though the defendant has the duty to go forward and present evidence to substantiate matters raised in his defense. Meshell v. State, 506 So.2d 989, 992 (Miss. 1987); Talbert v. State, 347 So.2d 352, 354 (Miss. 1977). Instruction S-3, as given, confuses the concepts of burden of proof, which lies with the state, and the burden of production, which lies with the defendant to substantiate matters raised in his defense. As such, an instruction like S-3 should not be given.
Finally, Instruction S-5, given in this case, reads:
The Court instructs the jury that malice aforethought mentioned in the indictment may be presumed from the unlawful and deliberate use of a deadly weapon.
Although malice aforethought may be presumed from the unlawful and deliberate use of a deadly weapon, this instruction may only be used "where the evidence has failed to establish the circumstances surrounding use of the weapon." Carter v. State, 493 So.2d 327, 330 (Miss. 1986).
The Carter opinion continues:
Where the facts have been set forth, even on conflicting testimony, the question of malice should be left for the consideration of the jury. [cites omitted] Since it is apparently so difficult for the Bench and Bar to recognize the proper case in which it may be granted, rarely should the prosecution seek, and the court give, such an instruction.
Id. Where the facts and circumstances surrounding the killing have been disclosed, giving this instruction invades the jury's consideration of the evidence of malice and should not be given.
I wish to emphasize again (see my special concurrence in Robinson v. State, 434 So.2d at 208) to the bench and bar the importance of jury instructions in our judicial system and to emphasize that careful attention needs to be given to correctly instructing the jury in the principles of law to be applied in each case.
HAWKINS, P.J., joins this concurring opinion.
NOTES
[1] Mr. E.O. Tubbs also sustained a wound to his back. A bullethole was found in the top back portion of a chair in the kitchen.
[2] The three charges for the death of Mr. Tubbs, assault of Mrs. Willodean Tubbs, and assault of Michael Tubbs and the facts surrounding them were so intertwined that the entire occurrence would have been shown in the trial of the murder charge.