602 So.2d 869 (1992)
Daniel W. HESTER
v.
STATE of Mississippi.
No. 89-KA-1097.
Supreme Court of Mississippi.
July 8, 1992.
*870 Thomas M. Fortner, Jackson, for appellant.
Michael C. Moore, Atty. Gen., Deirdre McCrory, Sp. Asst. Atty. Gen., Jackson, for appellee.
Before ROY NOBLE LEE, C.J., and ROBERTSON and SULLIVAN, JJ.
SULLIVAN, Justice, for the Court:
Daniel W. Hester was tried and convicted by the Circuit Court of Jackson County, Mississippi, for the capital murder of Frederick Jones. He was sentenced to life imprisonment in the Mississippi Department of Corrections. Because the trial court refused to submit the defense theory to the jury, we reverse and remand for a new trial.
On the evening of September 10, 1988, Edward Sodl and Frederick Jones, two sailors attached to the U.S.S. Wisconsin, walked on Ingalls Avenue in Pascagoula, Mississippi, en route to The Reb convenience store. The two sailors heard and noticed some guys behind them, looked back momentarily, then kept walking. They heard a shot and then were accosted by two young men who ordered the sailors to give them their money and their wallets. One of the men had a pistol pointed in the direction of the sailors. Jones and Sodl turned around. The pistol was fired. Jones suffered an immediate wound to his right forehead and fell to the ground. Both assailants ran. Sodl sought medical aid for Jones, who died as a result of the injuries received.
At trial the evidence showed, without dispute, that on the night of the fatal occurrence, Johnny Spicer, Timothy Hoops, Timothy Young, and Hester were together riding around in an automobile on the streets of Pascagoula. Young had a pistol. The suggestion was made that they rob somebody. From this point on, the memory of Spicer and Hester differ. Spicer testified that Sodl and Jones were accosted by Hester (age 19) and Hoops (age 13). Spicer claimed that Hester possessed the pistol and fired the fatal shot. Hester testified as follows:
Q When everybody was in the car going back towards Ingalls Avenue, who was driving the car?
A Tim Young.
Q And who was sitting in the front passenger's seat?
A Johnny Spicer.
Q Who was sitting in the back seat?
A Me and Tim Hoops.
Q Where in the back seat were you sitting?
A I was sitting on the driver's side.
Q And where in the back seat was Tim Hoops?

*871 A He was sitting on the passenger's.
Q Where was the gun? Do you know?
A The gun was up front, and Johnny was holding it.
Q Johnny Spicer was holding the gun?
A Yes, sir.
Q Tell us what happened next? Did ya'll go to Ingalls Avenue?
A Yes, sir. When we got to Ingalls Avenue, Johnny told us to get out and told us to bring back some evidence; a wallet or money.
Q What did he tell you to get out and do?
A He told us to get out and rob them sailors, them squids.
Q Did you see them?
A Them two squids?
Q Yes.
A Yes, they were coming out of that Dixie Bar.
Q Who called them squids, Daniel?
A Tim Young called them squids. But Johnny called them Navy guys... .
Q Okay. What did you do or what did you say?
A I told them, no, I wasn't going to rob nobody. It wasn't my intentions to rob nobody.
Q What happened then?
A They passed a gun. Johnny passed a gun to Tim Hoops in the back seat on the passenger's side... .
Q What happened then?
A All right, he took off running over there. He gave a warning shot up in the air.
Q What did you do when he gave the gun to Tim Hoops?
A I got out of the car, and I was leaning up against the car saying I wasn't going to do it. And I heard that warning shot... .
Q And what happened next? After you got out of the car, what happened next?
A That's when that warning shot got fired.
Q And what did you do? What did you think when you heard that shot?
A I thought somebody got hurt. So, I runned over there and I told him please don't do it.
Q Who were you talking to?
A I was talking to Hoops. I said please don't do it.
Q When you got over to Hoops, where were the two Navy boys?
A All right, here's Don's right here. We were standing about right here, and they were standing about right to here. And Tim kept asking them for their money.
Q And what did you do? Tell us what happened. Just tell us everything that happened from that point.
A That's whenever I grabbed the barrel of the gun and we started scuffling over it for about two seconds. That's whenever the gun went off.
Q Did you ever ask those two Navy boys for their money?
A No, sir.
Q Did you ever ask them for their wallet?
A No, sir.
Q Did you ever hold the gun in your hand before that boy got shot?
A No, sir.
On cross-examination, Hester testified as follows:
Q How far away were ya'll from the sailors at that point?
A About from here to about right there.
Q Distance wise?
A It was about I would say a good five feet away from them.
Q And he was by himself when he shot?
A Yes, sir.
Q Was he standing there all by himself talking to those sailors when you came up?
A Yes, sir.
Q He was just all by himself holding a gun on them? Is that what your testimony is?
A Yes, sir.
Q And you ran over there to stop him. Is that your testimony?

*872 A Yes, sir.
Q Did you grab the gun?
A We started scuffling over the gun.
Q You and Hoops?
A Me and Mr. Hoops.
* * * * * *
Q At the time you say you started scuffling with the gun, what was Mr. Hoops doing with the gun?
A I guess reloading it.
Q Did you grab the gun?
A I grabbed the barrel of it.
The record reveals that subsequent to submission of the case to the jury the following occurred:
BY THE COURT: Let the record show the jury knocked on the door and told the bailiff they had a question. The question was if they found the defendant guilty could they bring charges against Spicer. I told her to tell them I could not answer that ...
Hester appeals contending:
1. The trial court erred in refusing Instruction D-8 which would have allowed the jury to consider the theory of abandonment by him of a conspiracy or criminal enterprise to commit the crime of armed robbery.
Other issues are raised but are not dispositive.
Instruction D-8 reads as follows:
The Court instructs the jury that the abandonment of a criminal enterprise prior to the completion of the crime may, under certain circumstances, be a valid defense to a criminal charge. If a person becomes engaged in a criminal enterprise or conspiracy and, before completion of that conspiracy or enterprise, that person completely renounces and abandons the criminal enterprise or conspiracy voluntarily and of his own free will without intervention from legal authorities or for any other reason, then that person shall not be held criminally liable for any actions committed thereafter by his co-conspirators.
If you believe that Daniel Hester did, on September 10, 1988, unlawfully, wilfully, and feloniously embark upon a criminal enterprise or conspiracy with another person or persons, that enterprise being the commission of an armed robbery, and if you believe that Daniel Hester renounced and abandoned that criminal enterprise prior to the killing of Frederick Jones, and if you believe that Daniel Hester abandoned that criminal enterprise voluntarily and of his own free will without the intervention of any legal authority or for any other reason, then you may not find Daniel Hester guilty of capital murder.
Furthermore, if you believe that after the abandonment of the criminal enterprise as described above, that Daniel Hester by culpable negligence acted in such a way as to cause or procure the death of Frederick Jones, then you may find Daniel Hester guilty of manslaughter.
Instruction D-8.
In a homicide case, as in other criminal cases, the court should instruct the jury as to theories and grounds of defense, justification, or excuse supported by the evidence, and a failure to do so is error requiring reversal of a judgment of conviction. O'Bryant v. State, 530 So.2d 129, 133 (Miss. 1988); Young v. State, 451 So.2d 208, 210 (Miss. 1984), cert. denied, 469 U.S. 860, 105 S.Ct. 192, 83 L.Ed.2d 125 (1984); 40 Am.Jur.2d § 514, 765 (1968). Even though based on meager evidence and highly unlikely, a defendant is entitled to have every legal defense he asserts to be submitted as a factual issue for determination by the jury under proper instruction of the court. O'Bryant at 133. Where a defendant's proffered instruction has an evidentiary basis, properly states the law, and is the only instruction presenting his theory of the case, refusal to grant it constitutes reversible error. Murphy v. State, 566 So.2d 1201, 1207 (Miss. 1990); Sayles v. State, 552 So.2d 1383, 1390 (Miss. 1989).
There is no such thing as a directed verdict of guilty in a criminal case, either on the principal charge in general or on any of its components. In Lee v. State 469 So.2d 1225 (Miss. 1985), Lee was indicted *873 and tried for aggravated assault arising out of an attempted jail break. Griffin, a deputy sheriff, testified for the State that Lee placed a knife against his neck, and threatened to kill him if he did not have the door opened and let him out. Lee testified that he made an arrangement with Griffin to let him escape in return for $200 and two diamond rings. Lee further testified that he never had the knife near Griffin's neck nor intended to pull a knife or stab anyone. On appeal from refusal of the trial court to grant Lee an instruction on simple assault, a lesser included offense, we stated:
In Fairchild v. State, 459 So.2d 793 (Miss. 1984), we articulated this test for determining whether a lesser included offense instruction should be granted.
Only if this court can say, taking the evidence in the light most favorable to the accused, and considering all reasonable favorable inferences which may be drawn in favor of the accused from the evidence, and considering that the jury may not be required to believe any evidence offered by the State, that no hypothetical, reasonable jury could convict... . [the defendant] of simple murder, can it be said that the refusal of the lesser included offense instruction was proper.
459 So.2d at 801.
In addition, Ruffin v. State, 444 So.2d 839, 840 (Miss. 1984) has expressly held that only where the evidence could only justify a conviction on the principle (sic) charge should a lesser included offense instruction be refused.
* * * * * *
Without doubt, the testimony of officer Griffin is sufficient to establish that charge. On the other hand, the testimony offered by Lee in his own defense was quite to the contrary. The fact that the jury obviously did not believe Lee's testimony is beside the point.
Lee, 469 So.2d at 1230, 1231.
Hester has the same right as any other defendant to have his theory of defense submitted to the jury if supported by evidence. The record shows that Hester's version of the facts differs from the version related by State's witnesses. Hester established an evidentiary predicate for the defenses contained in his requested but refused instructions. The proffered instructions were the only ones presenting his theories of defense. It was reversible error for the trial court to refuse to grant the instructions embodying his defense theories. If they were in improper form, it was the duty of the trial court to see that they were placed in proper form for jury submission.
The failure of the trial court to grant Hester an instruction embodying his theory of defense constitutes reversible error and this cause is reversed and remanded for a new trial.
REVERSED AND REMANDED.
ROY NOBLE LEE, C.J., HAWKINS and DAN M. LEE, P.JJ., and PRATHER, ROBERTSON, PITTMAN, BANKS and McRAE, JJ., concur.