650 So.2d 846 (1995)
William GILES, Jr.
v.
STATE of Mississippi.
No. 92-DP-00428.
Supreme Court of Mississippi.
February 2, 1995.
*847 David M. Ratcliff, Ratcliff & Ratcliff, Laurel, for appellant.
Michael C. Moore, Atty. Gen., Marvin L. White, Jr., Asst. Atty. Gen., Jackson, Charlene R. Pierce, Sp. Asst. Atty. Gen., Jackson, for appellee.
En Banc.
McRAE, Justice, for the Court:

INTRODUCTION
William Giles, Jr. was tried and convicted in the Circuit Court of Jones County, Mississippi on a charge of capital murder. In a separate hearing, he was sentenced to death. He appeals, assigning fourteen issues as error. One such issue is whether the trial court erred when it refused to grant Giles an instruction embodying his only theory of defense. We find this particular issue meritorious and reverse and remand on this issue alone. All other issues raised before this Court are without merit. The defendant argued on appeal that his right to a speedy trial secured by the Mississippi Constitution of 1890 and the United States Constitution had been abridged. We, however, find his argument to be without merit. This issue as well as other issues that will be beneficial and useful on remand will nevertheless be addressed.

STATEMENT OF THE FACTS AND PROCEDURAL HISTORY
William Giles, Jr. was indicted on August 19, 1991, for the capital murder of his wife, Donna Giles, while engaged in the crime of sexual battery. Giles entered a not guilty plea in his arraignment on September 16, 1991. On this same day, the trial court also appointed Ronald Parrish, Jones County Public Defender, as counsel for Giles. On January 30, 1992, defense counsel filed a motion to dismiss with prejudice alleging that Giles was denied his constitutional right to a speedy trial. In a February 12, 1992, hearing, Circuit Court Judge B.J. Landrum overruled Giles' motion to dismiss with prejudice since continuances granted on September 16, 1991, and on November 4, 1991, (totaling approximately five months) had been by agreement of both parties. At trial, Giles was convicted of capital murder and sentenced to death. Giles' motion for a new trial was denied on April 24, 1992.
On the evening of October 26, 1990, William Giles visited with his wife, Donna Giles, in her apartment located at South Park Village in Laurel, Mississippi. Giles and his wife's conversation developed into an argument. This altercation resulted in Giles savagely attacking his wife with both a knife and a hoe. Donna Giles suffered somewhere between seventy-five (75) and one hundred (100) slash and stab wounds to the head and neck and forty-one (41) slash and stab wounds to the chest, back, arms, hands and thighs. In addition, there were lacerations and puncture wounds on the inner surface of her vaginal vault. Lastly, Donna Giles' body from waist down was set on fire. The cause of her death was a stab wound to her abdomen *848 that lacerated her liver, causing her to bleed to death. Defendant Giles was arrested on October 27, 1990, and later confessed to the murder.
Police Captain Jamie Bush testified that he and other police officers secured the crime scene. He found a broken hoe by the deceased's body and testified that human tissue and pubic hairs were found in the crevices of the broken hoe. Police Officer Harold Buckhaults was involved in the search for defendant Giles. He found Giles hiding under a bed in a friend's mobile home approximately two miles from the crime scene. Giles had blood on his clothes, shoes, and body, and a bloody knife was recovered from the mobile home. Officer Buckhaults transported Giles to the police station and took three statements from Giles, reading his rights to him each time. As Giles waived his rights each time, he, in the presence of two police officers and a secretary, confessed to murdering his wife. The next day, Giles confessed to the murder on videotape.
Doctor Michael H. West, a medical examiner and wound pattern analysis specialist, testified that the weapons recovered, the knife and hoe, matched the striations of the wounds found on the victim's body. Dr. West also was able to ascertain that the hoe handle had been inserted into the vagina which tore the vaginal vault. Dr. Steven Hayne, an anatomic and forensic pathologist, testified that he examined the vaginal area and found lacerations and puncture wounds on the inner surface of the vaginal vault. From his examination, he also concluded that the victim was alive when the hoe was inserted in her.
To create a defense to the underlying crime of sexual battery, which will be discussed later, the defense produced witnesses in order to establish that Giles lived with the victim. Giles had previously told the police in one of his statements that he lived in an apartment located at 307 North Pine Street in Laurel, not the apartment of his wife Donna. However, the landlord of the 307 North Pine Street apartment testified that he had never rented an apartment to Giles but admitted on cross-examination that he was not aware of who stayed with his tenants. A neighbor of Donna Giles testified that she often saw Donna and on occasions saw the defendant with her at night. Another neighbor remembered only Donna moving into the apartment but sometimes saw the defendant visiting. Giles testified that he lived with Donna in her South Park Village apartment, but also admitted to telling the police that he lived at 307 North Pine Street.
As a rebuttal witness, the resident manager of South Park Village testified that the defendant was not listed in the records as living in the apartment. On Donna Giles' application to rent, Donna was listed as the head of the household. Lastly, Tameka Jones, the victim's daughter, testified that only she, her mother and siblings lived at the South Park Village apartment and specifically stated the defendant, although he did visit, did not live there.

DISCUSSION OF LAW

I. THE REFUSAL OF THE TRIAL COURT TO GRANT GILES AN INSTRUCTION EMBODYING HIS THEORY OF DEFENSE CONSTITUTES REVERSIBLE ERROR.
Giles was indicted for the killing of his wife while engaged in the commission of the crime of sexual battery, thus constituting capital murder. At the close of the State's case, Giles moved for a directed verdict arguing that the defense to sexual battery found in Miss. Code Ann. § 97-3-99 (Supp. 1992) exonerated him from the crime. Although now amended, the section, at the time Giles committed the murder, read as follows:
A person is not guilty of any offense under sections 97-3-95 through 97-3-103 if the alleged victim is that person's legal spouse and at the time of the alleged offense such person and the alleged victim are not separated and living apart.
(Emphasis added.)
The evidence that defendant Giles and his wife were married was uncontradicted. Giles relies on Davis v. State, 611 So.2d 906 (Miss. 1992), for the proposition that he is immune from prosecution for capital murder pursuant to Miss. Code Ann. § 97-3-99 (Supp. 1992). In Davis, a husband was convicted of being *849 an accessory before the fact to rape of his wife by a man the defendant allowed into their home. This Court stated that had Davis committed the crime himself, he would have been immune from prosecution. Davis, 611 So.2d at 912. Davis, however, is not applicable in this case as there was no claim that Davis was living separate and apart from his wife.
Giles argues that as he and the victim were attempting to obtain welfare from the government, they purposely did not live together. He substantiates his argument by the fact that the manager acknowledged on cross-examination the practice of women renting in their name alone in order to receive assistance. However, the apartment manager did not testify that this was the case with the Giles but only made a broad statement.
Giles' only support that he was not "living separate and apart" is the meaning ascribed to that phrase by Black's Law Dictionary which provides:
Living separate and apart. Exists where the spouses have come to a parting of the ways and have no present intention of resuming marital relations and taking up life together under the same roof, not where they are residing temporarily in different places for economic or social reasons... .
Black's Law Dictionary, 843 (5th ed. 1979) (emphasis added). Giles submits that although many may not approve of their "economic or social reasons" for separating, i.e. welfare fraud, this Court should conclude that they were not living separate and apart and thus, cannot be found guilty of the underlying crime of sexual battery.
Giles argues that the trial court erred when it refused Instruction D-8 which states:
If you believe beyond a reasonable doubt that the defendant William Giles, Jr., killed Donna Giles, but that the defendant William Giles, Jr. and Donna Giles were married and living together, then it is your sworn duty to find the defendant, William Giles, Jr., not guilty of the charge laid in the indictment.
Giles relies on Hester v. State, 602 So.2d 869, 872-73 (Miss. 1992), which required a reversal of a capital murder conviction because the trial court's refusal to grant an instruction deprived the defendant of instructing the jury as to his theory of defense. In Hester, this Court provided:
In a homicide case, as in other criminal cases, the court should instruct the jury as to theories and grounds of defense, justification, or excuse supported by the evidence, and a failure to do so is error requiring reversal of a judgment of conviction. (Citations omitted). Even though based on meager evidence and highly unlikely, a defendant is entitled to have every legal defense he asserts to be submitted as a factual issue for determination by the jury under proper instruction of the court. (Citations omitted.) Where a defendant's proffered instruction has an evidentiary basis, properly states the law, and is the only instruction presenting his theory of the case, refusal to grant it constitutes reversible error.
Id. at 872 (emphasis added) (citations omitted). This holding is in accord with the longstanding precedent of the United States Court of Appeals for the Fifth Circuit. United States v. Rubio, 834 F.2d 442, 446 (5th Cir.1987) ("It has long been well established in this Circuit that it is reversible error to refuse a charge on a defense theory for which there is an evidentiary foundation and which, if believed by the jury, would be legally sufficient to render the accused innocent." (quoting United States v. Lewis, 592 F.2d 1282, 1285 (5th Cir.1979)).
The State is hard pressed to make any viable argument other than the refusal was harmless error. The State argues the evidence adduced at trial overwhelmingly demonstrated that the defendant and Donna Giles were living separate and apart. However, in refusing this proposed instruction, the trial court denied the defendant the only opportunity he could have for the jury to consider his sole theory of defense. It appears that there was some confusion at the time this instruction was argued; however, this refusal was erroneous, denied the defendant a fundamentally fair trial and requires *850 that his conviction be reversed. Based on this issue and this issue alone, we reverse and remand.
Defendant argued on appeal that he was denied his right to a speedy trial secured by the Mississippi Constitution of 1890 and the United States Constitution. Had we found that Giles' right to a speedy trial had been violated, we would have been required to reverse the conviction and sentence and discharge the defendant. We, however, find this issue not to be of merit but, nonetheless, explain and illuminate our reason for the decision. A discussion regarding the defendant's right to a speedy trial as well as other issues raised on appeal that will be helpful for both the defense and the prosecution when Giles is retried for the capital murder of his wife follows.

II. HAD THE DEFENDANT'S RIGHT TO A SPEEDY TRIAL SECURED BY THE SIXTH AND FOURTEENTH AMENDMENTS TO THE CONSTITUTION OF THE UNITED STATES AND ARTICLE 3, SECTION 14, 24 AND 26 OF THE MISSISSIPPI CONSTITUTION OF 1890 BEEN ABRIDGED?
The right to a speedy trial is secured by Article III, Section 26 of the Mississippi Constitution of 1890 and by the Sixth and Fourteenth Amendments to the United States Constitution. The following chronological chart illustrates the sequence of events that took place.

Arrested and Incarcerated ................ October 27, 1990
Indictment ............................... August 16, 1991
Arraigned and Appointed Counsel .......... September 16, 1991
Continuance by agreement (totaling 49
 days) .................................. September 16, 1991
Defense motion for psychiatric examination
 granted ................................ November 4, 1991
Court was furnished with psychiatric
 report ................................. February 12, 1992
Trial .................................... April 13, 1992
Total days ............................... 532 days
Total days from arrest to trial minus
 continuances ........................... 383 days

In considering Giles' constitutional claim, the right to a speedy trial guaranteed by the Sixth and Fourteenth Amendments attaches at the time of arrest. Handley v. State, 574 So.2d 671, 674 (Miss. 1990); Smith v. State, 550 So.2d 406, 408 (Miss. 1989). Once the constitutional right to a speedy trial has attached, we must consider and apply the federal test enunciated in Barker v. Wingo, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), and adopted by this Court in determining whether the defendant was denied his right to a speedy trial. Vickery v. State, 535 So.2d 1371, 1376 (Miss. 1988); Wells v. State, 288 So.2d 860 (Miss. 1974). The Supreme Court in Barker opined that four factors must be considered:
(1) Length of delay;
(2) Reason for the delay;
(3) Defendant's assertion of right; and
(4) Prejudice resulting to defendant.
Barker, 407 U.S. at 530, 92 S.Ct. at 2192. The Court forewarned that all factors must be considered together with no one individual factor completely disposing of the issue. Id. at 533, 92 S.Ct. at 2193. With this in mind, we turn to the Barker factors.

1. Length of Delay
Giles was arrested on October 27, 1990, and his trial began on April 13, 1992. The total number of days from arrest to trial was five hundred and thirty-two (532) days, approximately eighteen months. Giles, however, cannot complain of any delays attributable to him. Williamson v. State, 512 So.2d 868, 876 (Miss. 1987). Therefore, the time period from September 16, 1991, to February 12, 1992, shall not be considered when calculating the length of delay since the first continuance was by agreement of both parties and the second continuance was on defendant's motion. As a result, the total number of applicable days from arrest to trial is three hundred eighty-three (383) days.
What comprises an impermissible delay is problematical. We have on occasion reversed cases wherein the delay was less than 383 days, but have also denied reversal on this ground where the delay was more than 383 days. Bailey v. State, 463 So.2d 1059, 1062 (Miss. 1985) (290 days); Lightsey v. State, 493 So.2d 375, 378 (Miss. 1986) (458 days). This Court has pronounced that a postponement of eight months or more is "presumptively prejudicial." Smith v. State, 550 So.2d 406, 408 (Miss. 1989). As such, we must proceed with the remaining factors to determine if there are factors that overcome the presumed prejudice. Stated previously however, this one factor, alone, is insufficient *851 to cause reversal but triggers an examination of the other three factors. Handley v. State, 574 So.2d 671, 676 (Miss. 1990).

2. Reason for Delay
The first delay is the approximate ten-month period that followed from the time Giles was arrested until he was indicted. The record does not indicate or reveal any reason for this delay. The State attributes the delay to the negligence of the prosecutor who was in office at the time this case arose because once the present prosecutor came into office, the case was tried, excluding the time remaining on the continuance for the psychiatric evaluation, in sixty (60) days.
The State's argument is substantiated by several articles included in the appellant's brief from the local Laurel newspaper regarding cases in Jones County that were dismissed due to lack of prosecution. One article notes that the district attorney who tried the case sub judice inherited a backlog of five hundred seventy (570) cases. According to the articles, this enormous backlog was created by the fact that the court docket was not called during the last two terms under the former District Attorney Wyatt Collins.
"Where the defendant has not caused the delay and the State does not show good cause for that delay, this Court weighs this factor against the prosecution." Jenkins v. State, 607 So.2d 1137, 1139 (Miss. 1992). However, the Supreme Court in Barker stated that a deliberate attempt by the State to delay a trial should be weighed more heavily than other neutral reasons, and a "more neutral reason such as negligence or overcrowded courts should be weighed less heavily ..." Barker, 407 U.S. at 531, 92 S.Ct. at 2192. See Jenkins v. State, 607 So.2d 1137, 1138-39 (Miss. 1992) ("[A]ny delay unintentionally caused by the State will not be weighed as heavily against the prosecution as where the delay was intended to hurt the defendant's case."); Kinzey v. State, 498 So.2d 814, 817 (Miss. 1986) (congested docket was sufficient to establish good cause for delay); Diddlemeyer v. State, 398 So.2d 1343, 1345 (overcrowded docket constituted good cause for continuance).
It is noted that the cases in which this Court has reversed judgments based on the speedy trial issue, the State invariably failed to show good cause for the delay. See Jenkins v. State, 607 So.2d 1137, 1140 (Miss. 1992); Smith v. State, 550 So.2d 406, 409 (Miss. 1989); Vickery v. State, 535 So.2d 1371, 1377 (Miss. 1988); Beavers v. State, 498 So.2d 788, 790 (Miss. 1986); Perry v. State, 419 So.2d 194, 199 (Miss. 1982). The State's reason for the delay from arrest until indictment is sufficient to withstand scrutiny. This is evidenced by the fact that once the newly elected district attorney took office, excluding the continuance charged to Giles, the case was tried in sixty (60) days. The State showed good cause for the delay, and this factor is not weighed against the State. Nevertheless, this Court admonishes former District Attorney Wyatt Collins. There is no excuse for what the district attorney did or rather failed to do. It is unconscionable for a district attorney not to bring any cases to docket for two court terms and only goes against what a district attorney's responsibilities truly are.

3. Assertion of Right
This Court has repeatedly held that "[a] defendant has no duty to bring himself to trial." Beavers, 498 So.2d at 791. See Nations v. State, 481 So.2d 760, 761 (Miss. 1985); Turner v. State, 383 So.2d 489, 491 (Miss. 1980). However, when a defendant asserts his right to a speedy trial late in the process, the late filing will not be fatal, but will weigh against the defendant. Smith v. State, 550 So.2d 406, 409 (Miss. 1989). This factor, like all other factors, is only one factor to consider in the Barker balancing test. Barker, 407 U.S. at 533, 92 S.Ct. at 2193.
Giles argues that because he was not appointed counsel for eleven months, this time should not weigh against him. After being appointed as counsel at the arraignment, Public Defender Ronald Parrish remained of counsel for four months. He then resigned, and the position was filled by the public defenders who tried the case. It was then, some one hundred thirty-six (136) days after Giles had been appointed counsel, that he filed a motion to dismiss on the grounds of *852 a denial of a speedy trial. This was seventy-four (74) days prior to trial. The State argues that the assertion of the right to a speedy trial does not totally depend on the appointment of counsel since there exist many cases replete with pro se motions for speedy trial requests. Nevertheless, this factor does not weigh against Giles since he did assert his right to a speedy trial once counsel was appointed.

4. Prejudice to the Defendant
The Supreme Court in Barker expressly held that there are three interests that the right to a speedy trial protects: (1) deterring oppressive pretrial incarceration; (2) decreasing anxiety and concern; and (3) limiting the likelihood the defense will be prejudiced. Barker, 407 U.S. at 532, 92 S.Ct. at 2192. See Vickery, 535 So.2d at 1377. In the case at hand, Giles had twice confessed to murdering his wife, and therefore, it would seem he should have little if any hope of being released from prison. Secondly, there would, of course, exist anxiety and concern when one faces a capital murder charge. Giles, however, did not demonstrate much concern since he never requested counsel be appointed.
"[I]t is clear that an affirmative showing of prejudice is not necessary in order to prove a denial of the constitutional right to a speedy trial." Flores v. State, 574 So.2d 1314 (Miss. 1990). See Doggett v. United States, 505 U.S. ___, ___, 112 S.Ct. 2686, 2692, 120 L.Ed.2d 520, 530 (1992) ("[C]onsideration of prejudice is not limited to the specifically demonstrable ... particularized prejudice").
In Doggett, the Supreme Court held that the delay between defendant Doggett's indictment and arrest violated his right to a speedy trial. Doggett, at ___, 112 S.Ct. at 2192, 120 L.Ed.2d at 532. In February of 1980, Doggett was indicted for conspiring to distribute cocaine. Doggett subsequently left the country unbeknownst to officials. In September of 1981, Doggett was arrested in Panama on drug charges. Id. at ___, 112 S.Ct. at 2688, 120 L.Ed.2d at 526. Although Panamanian officials promised to extradite Doggett back to the United States, they freed him and allowed him to go to Columbia. Id.
In 1982, Doggett slipped through American Customs in New York City and began a new life in Virginia. Id. at ___, 112 S.Ct. at 2688, 120 L.Ed.2d at 527. It was not until 1988 when a simple credit check was being run on people subject to outstanding arrests that Doggett was found. Id. Doggett was arrested some eight and a half years after his indictment. Id.
As reasoning behind its reversal, the Court stated that, "[f]or six years, the Government's investigators made no serious effort to test their progressively more questionable assumption that Doggett was living abroad, and, had they done so, they could have found him within minutes." Id. at ___, 112 S.Ct. at 2691, 120 L.Ed.2d at 529. The Court further stated that had the United States officials pursued the defendant with reasonable diligence, his claim would have failed. Id. at ___, 112 S.Ct. at 2693, 120 L.Ed.2d at 531.
The case at hand can be distinguished from Doggett in that the government officials egregiously failed to pursue its case and arrest Doggett for over eight years. The government, through its negligence, allowed Doggett to return to the United States, become married, receive a college degree, become steadily employed and live openly under his true name. In the case at hand, the police officials were not negligent in arresting Giles.
Although the Doggett Court held that it is not necessary for a defendant to demonstrate particularized prejudice, this Court has stated that it "will not allow speculative harm to tip the scales in [a defendant's] favor." Noe v. State, 616 So.2d 298, 302 (Miss. 1993). Giles suffered no prejudice that compares to the prejudice suffered by the criminal defendants in cases where this Court has reversed based on the speedy trial issue.
In Smith v. State, 550 So.2d 406, 409 (Miss. 1989), this Court held that the defendant was denied his constitutional right to a speedy trial and, accordingly, reversed. In Smith, the defendant was arrested on May 20, 1986, for simple assault and carrying a concealed *853 weapon. Id. at 407. On September 19, 1986, defendant Smith was also indicted by a federal grand jury on "one count of making a false statement in the acquisition of a firearm, and on one count of unlawfully possessing a firearm." Id. Smith was convicted in federal court of the false statement count on February 23, 1987, and the other charge was dismissed. Id. Smith was later re-indicted by a state grand jury and was charged as an habitual offender. Id. The basis for the habitual offender status was a prior 1979 conviction and the 1987 federal conviction. Id. Smith was convicted in state court and was sentenced to the maximum imprisonment for each felony. Id. This Court held that Smith was definitely prejudiced by the delay in trial because:
[h]ad Smith been tried prior to February 23, 1987 .. . he could not have been sentenced as an habitual offender. Quite possibly, he would not have received the maximum sentence on the two charges. Because he was sentenced as an habitual offender, he lost the opportunity for probation and parole.
Id. at 409.
In Vickery v. State, 535 So.2d 1371, 1377 (Miss. 1988), this Court held that the criminal defendant suffered oppressive pretrial incarceration where it was shown that defendant was severely beaten by another inmate causing defendant to be hospitalized. Vickery was, in addition, hospitalized a second time as a result of a nervous breakdown. Id. Lastly, defendant endured two rape attempts while in the prison hospital. Id. See Bailey v. State, 463 So.2d 1059, 1063 (Miss. 1985) ("[T]he prejudice to Bailey was threefold; he was ineligible for parole and disqualified from participating in rehabilitation programs[, and] ... [h]e was also unable to properly locate witnesses that would have substantiated his defense ..."); Perry v. State, 419 So.2d 194, 199 (Miss. 1982) ("Perry was prejudiced in serving a lengthy period of time at Parchman without the opportunity to participate in various rehabilitation programs due to the pendency of the Harrison County charges.").

5. Conclusion
Although the defendant did assert his right to a speedy trial, it is but one factor to consider, and a complete analysis of the factors enunciated in Barker favors the State. The State provided legitimate and justifiable reasons for the delay evidenced by the fact that this case was tried within sixty (60) days, excluding time subtracted for defendant's continuance, from when the new district attorney took office. In addition, Giles suffered no undue prejudice in the delay.

III. WAS GILES ENTITLED TO A LESSER INCLUDED OFFENSE INSTRUCTION?
Giles contends that the trial court erred in failing to grant a requested lesser-included offense instruction. The trial court refused an instruction which, according to Giles, would have informed the jury that it should convict the defendant of simple murder should the State fail to prove all the elements of capital murder. The proposed instruction which Giles argues is a lesser-included offense instruction, however, is simple form-of-verdict instruction.
In the very recent case of Conner v. State, 632 So.2d 1239 (Miss. 1993), this Court was faced with both the same refused form-of-verdict instruction and the same argument Giles presents. In Conner, this Court held that the trial court's refusal to grant a lesser included offense instruction was not reversible error for two reasons. First, the defendant never sought a lesser-included offense instruction and failed to complain of the court's refusal to give one. Secondly, the record in Conner had no evidentiary foundation for which upon the instruction could stand. Conner, 632 So.2d at 1254.
This Court held that the proposed form-of-verdict instruction in Conner did not constitute a lesser-included offense instruction since the defense "tendered no instruction defining simple murder, nor did it ask the trial court to explain to the jury that it could convict the defendant of a lesser crime than capital murder." Id. Like Conner, in the case sub judice, Giles offered no instruction defining simple murder and, in addition, did not request that the trial court convict Giles of a lesser crime than capital murder. Giles' *854 argument that the trial court should have reformed this instruction so that it properly informed the jury of its authority to find the defendant guilty of some lesser offense is of no merit. In Conner, this Court held that its "case law does not impose upon a trial court a duty to instruct the jury sua sponte, nor is a court required to suggest instructions in addition to those which the parties tender." Id.
However, on remand if Giles presents a lesser-included offense instruction, the trial court judge should be mindful of this Court's evidentiary standard found in Harper v. State, 478 So.2d 1017, 1021 (Miss. 1985):
[A] lesser included offense instruction should be granted unless the trial judge  and ultimately this Court  can say, taking the evidence in the light most favorable to the accused and considering all reasonable favorable inferences which may be drawn in favor of the accused from the evidence, that no reasonable jury could find the defendant guilty of the lesser included offense (and conversely not guilty of at least one essential element of the principal charge).
See McGowan v. State, 541 So.2d 1027, 1028 (Miss. 1989). In Welch v. State, 566 So.2d 680, 684 (Miss. 1990), this Court further supported the granting of lesser-included offense instructions stating:
Defendants are entitled to have instructions on their theory of the case presented to the jury for which there is foundation in evidence, even though the evidence might be weak, insufficient, inconsistent, or of doubtful credibility.

IV. DID THE TRIAL COURT ERR IN GRANTING SENTENCING INSTRUCTION S-1?
Giles makes numerous arguments contending that the trial court erred in granting Instruction S-1, a comprehensive instruction which guided the jury in its decision at the penalty phase of the trial. Among the assignments of error was the fact that the trial court failed to inform the jury of its life option. Sentencing Instruction S-1 in the case at hand provided a space for the foreman of the jury's signature after the death penalty option. The instruction, however, did not provide a space for a signature after the option of life imprisonment or the option of being unable to agree on punishment. Jenkins v. State, 607 So.2d 1171 (Miss. 1992) provides clear guidance on this issue since the instruction questioned in Jenkins is essentially the same as the one in the case at hand. This Court held:
[W]e simply note that Instruction C-1-S-A, as given by the lower court, was erroneous.
... Page three contained the first option, the form of the verdict for the death penalty, and concluded with a line designated for the foreman's signature. Page four contained Option Two, the form of the verdict for life imprisonment, and Three, the verdict if a unanimous four contained Option Two, the form of the verdict for life imprisonment, and Three, the verdict if a unanimous decision could not be reached, but provided no spaces for the foreman's signature. We concerned that the instruction as written and printed could cause the jury to neglect Options Two and Three. Upon retrial, we suggest that the trial court revise this instruction to more clearly instruct the jury.
Jenkins, 607 So.2d at 1180. This assignment of error lacks merit since the only objection interposed by defense counsel to Instruction S-1 concerned the especially heinous, atrocious or cruel language of the instruction. Defense counsel affirmatively stated that it was otherwise satisfied with the instruction.
In Moawad v. State, 531 So.2d 632 (Miss. 1988), the defendant on appeal assigned as error the granting of several sentencing instructions. This Court, however, held:
The record reflects that no objection was made to any of the three instructions set forth above. Therefore, the points are procedurally barred and are not properly before the Court for consideration.
Moawad, 531 So.2d at 635. See Willie v. State, 585 So.2d 660, 680 (Miss. 1991); Settles v. State, 584 So.2d 1260, 1262 (Miss. 1991); Walker v. Graham, 582 So.2d 431, 432 (Miss. 1991). Since the only objection that Giles interposed to Instruction S-1 was the included aggravating factor of especially heinous, *855 atrocious or cruel, all other grounds were waived when defense counsel affirmatively stated that it was otherwise satisfied with the instruction. See Cole v. State, 525 So.2d 365 (Miss. 1987), cert. denied, 488 U.S. 934, 109 S.Ct. 330, 102 L.Ed.2d 348 (1988). Although this issue is procedurally barred, the trial court should not allow an instruction such as this on remand.

CONCLUSION
All issues raised before this Court in this appeal that were not specifically addressed in this opinion have no merit. However, in refusing the proposed instruction that embodied Giles' only defense, the trial court denied the defendant the only opportunity he could have had for the jury to consider his sole theory of defense. Accordingly, Giles' conviction must be reversed, his sentence vacated and his case remanded for a new trial.
REVERSED AND REMANDED FOR A NEW TRIAL. SENTENCE IS VACATED.
HAWKINS, C.J., DAN M. LEE and PRATHER, P.JJ., and PITTMAN, BANKS, JAMES L. ROBERTS, Jr. and SMITH, JJ., concur.
PRATHER, P.J., concurs with separate written opinion joined by HAWKINS, C.J., and BANKS, JAMES L. ROBERTS, Jr. and SMITH, JJ.
SULLIVAN, J., concurs in part, dissents in part with separate written opinion.
BANKS, J., concurs in result with separate written opinion joined by DAN M. LEE and PRATHER, P.JJ. and PITTMAN, J.
PRATHER, Presiding Justice, concurring:
I agree with the majority's holding that this case must be reversed under our past law in effect at the time the crime was committed. However, I note that had this case had been tried after the date of March 27, 1993, the defendant would not have had the benefit of his alleged defense and this reversal of verdict. On the date of March 27, 1993, Miss. Code Ann. § 97-3-99 (1994 rev.) was amended with this additional language, to wit:
provided, however, that the legal spouse victim may be found guilty of sexual battery if the legal spouse engaged in forcible sexual penetration without the consent of the alleged victim.
Under no set of circumstances can one say that the wife could have consented to this type conduct evidenced in this record. But subsequent amendment to statutory laws are not retrospectively applied. City of Clarksdale v. Mississippi Power and Light Co., 556 So.2d 1056, 1057 (Miss. 1990) (holding new statutes affective substantive rights inapplicable to pending actions). See also, Bighames v. State, 462 So.2d 796, 797 (Ala. Crim. App. 1984) (stating "[m]atters which are jurisdictional or substantive in nature are governed by the law applicable at the time of the offense absent a clear expression in the statute or rule to the contrary."), cert. denied, Alabama Supreme Court docket No. 84-274 (Ala. 1985). Therefore, this victim did not have the benefit of this enlightened change of our criminal law.
HAWKINS, C.J., and BANKS, JAMES L. ROBERTS, Jr. and SMITH, JJ., join this opinion.
SULLIVAN, Justice, concurring in part, dissenting in part:
I agree with the majority's holding that the trial court committed reversible error when it refused to grant Giles an instruction embodying his only theory of defense. However, because I also believe Giles' constitutional right to a speedy trial was clearly violated in this case, I must dissent to the majority's holding on that issue.
I agree that the delay in this case creates a presumption of prejudice and that a review by this Court of the remaining three Barker factors is necessary. However, beginning with the second Barker factor, reason for the delay, I cannot join the majority's opinion.
The fact that former district attorney Wyatt Collins was remiss in failing to bring any cases to docket for two court terms is relevant to the weight accorded this factor on review. However, Collins' negligence does not weigh this factor in the State's favor, it *856 just means that because the State did not intentionally delay Giles' trial, the reason for the delay is weighed less heavily against the State. This factor still weighs in Giles' favor in the analysis. Rhymes v. State, 638 So.2d 1270, 1273-74 (Miss. 1994); Perry v. State, 637 So.2d 871, 875 (Miss. 1994).
Apparently the majority believes that governmental negligence is tantamount to good cause. I agree that if the government successfully shows good cause for the delay this factor will not be weighed against it. However, the majority asserts that
[t]he State's reason for the delay from arrest until indictment is sufficient to withstand scrutiny. This is evidenced by the fact that once the newly elected district attorney took office, excluding the continuance charged to Giles, the case was tried in sixty (60) days. The State showed good cause for the delay, and this factor is not weigh [sic] against the State.
This reasoning is not persuasive. It may be that the newly elected district attorney did her job bringing this case to trial once she inherited the backlog of cases left by Wyatt Collins. That, however, has nothing to do with the fact that during the period from Giles' arrest to his indictment, a period of approximately ten (10) months, Wyatt Collins inexcusably, and to use the majority's word, unconscionably, failed to do his job. Wyatt Collins' failure to attend to his duties cannot equate to good cause. Even the typical crowded docket situation not negligently caused by the district attorney weighs lightly against the State:
Overcrowded courts should be weighed less heavily but nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant.
Barker, 407 U.S. at 531, 92 S.Ct. at 2192. We have also stated that "[docket congestion] is a reason which weighs against the state, but not heavily." Adams v. State, 583 So.2d 165, 169 (Miss. 1991).
Additionally, it is my belief that the time it took to bring Giles to trial subsequent to the newly elected district attorney taking office also weighs against the State. Even though the newly elected district attorney did the best she could with the overcrowded docket left behind by Wyatt Collins, it still took sixty (60) more days to bring Giles to trial. Although this was not intentional delay, it was the result of the former district attorney's negligence, and must be weighed against the State.
The argument that the State has shown good cause for the delay in this case clearly falls short. The present case is more akin to cases cited by the majority in which this Court did not find good cause for the delay. Jenkins v. State, 607 So.2d 1137, 1140 (Miss. 1992) (no good cause shown when State failed to indict defendant  defendant did not need to be present in state to be indicted by grand jury); Vickery v. State, 535 So.2d 1371, 1377 (Miss. 1988) (no good cause shown  State procrastinated in requesting lab samples, failed to move defendant to Mississippi for trial, and failed to provide discovery). See also Rhymes and Perry.
The majority concedes that the third Barker factor, assertion of right, weighs in Giles' favor as he asserted his right once counsel was appointed. While it is true he did not assert his right to a speedy trial early on, there is no persuasive evidence to rebut the presumption that Giles in fact wanted a speedy trial. Giles asserted his right to a speedy trial two and one-half months before trial. This is not a case like Smith v. State, 550 So.2d 406 (Miss. 1989), where this Court weighed this factor against the defendant who waited until five days prior to trial to assert his right to a speedy trial.
Finally, given that the first three factors weigh in the defendant's favor, it is not necessary to weigh the fourth factor, prejudice to the defendant. Prince v. Alabama, 507 F.2d 693, 707 (5th Cir.1975). Further, presumptive prejudice has been established by the delay in this case. In any event, the majority even acknowledges that "an affirmative showing of prejudice is not necessary in order to prove a denial of the constitutional right to a speedy trial." Flores v. State, 574 So.2d 1314 (Miss. 1990).
Besides the obvious prejudice Giles suffered as a result of sitting in jail for ten *857 months while the State negligently failed to indict him, and the anxiety and concern he surely suffered as a result of being incarcerated awaiting a capital murder charge, the majority wholly fails to acknowledge Giles' argument that his defense was impaired by the delay. Giles argues that the delay prevented him from calling as a witness the man who managed and resided at the apartment complex where Giles claimed he was living with his wife at the time of the murder. Under the statute at that time, if he lived there with his wife, he could not have been convicted of capital murder.
The State argued in its brief that Giles did not suffer prejudice because the current apartment manager testified and produced rental records of the apartment. This is exactly the reason Giles needed the testimony of the man who managed the complex when the crime was committed. The rental records reflected that the apartment was rented in Giles' wife's name only. While it is certainly not commendable, Giles' defense was in part based on the fact that he did live with his wife who rented the apartment solely in her name for welfare purposes. There is no way we could ever know what the lost witness would have testified to. He lived at the apartments when the murder was committed. Had he been available, he might have convinced the jury that Giles lived there while perpetrating welfare fraud. The jury, with the benefit of the jury instruction the majority holds Giles was entitled to, might not have convicted him of capital murder. The apartment manager's testimony was potentially the difference between life and death.
It is difficult to imagine a more heinous murder than the one committed in this case. However, no matter how gruesome the facts, they cannot serve to justify the incorrect and unconstitutional result reached by the majority today. Because Giles' constitutional right to a speedy trial was clearly violated in light of the four Barker factors, we must reverse and remand on this issue directing that Giles be discharged.
BANKS, Justice, concurring:
I concur with the result reached by the majority. I write separately only to note my disagreement with two things that are said.
I agree with Justice Sullivan that the prosecutor's neglect of duty cannot be deemed "good cause" for a delay in the context of the right to a "speedy trial." Nevertheless, Giles confessed to and has never denied, brutally murdering his wife. The only issue to be tried here was whether he should receive a penalty of death. He never demanded a speedy trial. He did, however, seek dismissal for failure to have given him a speedy trial, which is not quite the same. Adams v. State, 583 So.2d 165 (Miss. 1991); Perry v. State, 637 So.2d 871, 875 (Miss. 1994). In any respect, he was brought to trial in 17 months, including all continuances, not an inordinate time for capital murder cases.
Giles also asserts that his failure to obtain a speedy trial prejudiced his ability to obtain the testimony of the apartment manager employed at the subject premises at the time of the murder. There was neither proof in the record that Giles made any attempt to locate this former apartment manager nor that he anticipated calling the manager. In fact, the current apartment manager testified for the state as a rebuttal witness. In addition, there was no evidence to support Giles' belief that the former apartment manager would have testified to anything other than that testified to by the present manager. Indeed, Giles' alleged living arrangement with Donna was surreptitious by design. One would not have expected the apartment manager to have known that he was living there because the purpose of the alleged secrecy was to deceive welfare authorities. Furthermore, Giles made no claim of prejudice in this or any other respect either in the presentation of his motion to dismiss prior to trial or in his presentation of that issue in his motion for new trial or judgment not withstanding the verdict. In sum, I agree with the balance of the analysis of the majority on this issue.
My other point of departure is slight but, in my view, important to our quest for orderly justice. I simply cannot agree to the absolute position that a trial court has no duty to instruct sua sponte. That statement conflicts not only with our holdings that there is a duty to instruct sua sponte in *858 specific circumstances, see, e.g., Peterson v. State, 518 So.2d 632 (Miss. 1987) (trial judge should have given limiting instruction sua sponte informing jury that they could consider defendant's prior convictions only for impeachment); see also Pugh v. State, 584 So.2d 781 (Miss. 1991), but also with the tenor of the obligation that we placed on trial judges in Harper v. State, 478 So.2d 1017 (Miss. 1985). Where a litigant offers less than perfect instructions on an issue and there is a clear entitlement to some instruction, the trial court is obligated to reform the instruction or give sufficient guidance to allow counsel to properly reform the instruction. Id. at 1022-1023. It is, in my view, reasonable to place upon the trial court a duty to see that juries are instructed as to those areas of law essential to a fair administration of justice in the circumstances of the case. To the extent that we continue the rhetoric of "no duty", especially in instances where a question is raised at trial fairly putting the court on notice that an important instruction is lacking, we excuse judicial indifference.
DAN M. LEE and PRATHER, P.JJ., and PITTMAN, J., join this opinion.