# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 1999-KA-00706-SCT

*ANTWON LESHAY ELLIS*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 04/07/1999 |
| TRIAL JUDGE: | HON. W. SWAN YERGER |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | DAN W. DUGGAN, JR. |
| | VICKI L. GILLIAM |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: JEAN SMITH VAUGHAN |
| DISTRICT ATTORNEY: | EDWARD PETERS |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED-12/14/2000 |
| MOTION FOR REHEARING FILED: | 12/21/2000; denied 2/8/2001 |
| MANDATE ISSUED: | 2/22/2001 |

**EN BANC.**

**SMITH, JUSTICE, FOR THE COURT:**

¶1. Antwon Leshay Ellis, convicted of conspiracy to commit murder and murder in the Hinds County Circuit Court, now appeals to this Court**.** We affirm the trial court as to the conspiracy to commit murder conviction and the trial court's decision to deny the lesser-related offense jury instruction.

## I.

¶2. On August 23, 1997, Antwon Leshay Ellis ("Ellis") was riding in a car with Marcus Reese ("Reese") and Michelle Holden ("Holden"). Beyond that, the facts in his case have been told so differently by the witnesses, both during trial and in pre-trial statements, that it is necessary to outline the story as told by each.

¶3. First, Carlos Gray ("Gray") testified at trial that Ellis and Reese came over to his house on Hughes Street and inquired as to the location of the dwelling of Commodore Johnson. Gray took the two to the apartment and got Johnson to come to the door. When Johnson came to the door, he had a gun in his hand, but he put it down. Then, after some arguing between Johnson and Ellis, and after Ellis said that Johnson owed him some drug money, Gray noticed that Ellis had a gun in his hand. Ellis told Gray to move and shot Johnson through the screen door which was closed. When Gray saw Johnson holding his stomach and

back, he ran to call an ambulance. Gray gave an original statement to the police in which he denied being at Johnson's apartment.

¶4. Reese testified at trial that he was picked up on August 23, 1997, by Ellis, Holden, and Holden's daughter. He further testified that Holden asked Ellis "You gonna do that" to which Ellis responded "Yeah, I'm fixing to go do that." Reese's trial testimony revealed that Holden dropped Reese and Ellis off on Hughes street where Ellis said they were going to go "straighten up a little business." (In Reese's original statement to the police, he never mentioned Holden or her daughter in the events.). Reese stated that he and Ellis went to Gray's house where Gray agreed to take them to Johnson's apartment. Upon arrival, Reese watched while Gray and Ellis stepped on the porch. When Johnson appeared, an argument ensued and then Ellis shot Johnson. (Reese told the police in an earlier statement that Johnson rushed Ellis, but testified that Ellis told him to say this to the police.). On cross-examination, Reese said he saw Johnson and Ellis talk for three minutes with the screen-door open. After the shooting, Reese testified at trial that he and Ellis ran back to Holden's car where Holden asked, "Did you do that?" to which Ellis answered "Yes, I did it." Reese testified that in exchange for his testimony, he was promised a sentence of zero to twenty years.

¶5. The third version of the events on that evening was that of Ellis, introduced at trial through the testimony of Detective Williams of the Jackson Police Department relating Ellis's earlier statement given to the police. In his statement, Ellis said that on Hughes Street he met Gray and Reese who wanted to go to Johnson's house because he owed the two of them money and that they wanted to use Ellis's gun to intimidate Johnson. Upon arrival at the apartment, Ellis stated that a conversation ensued among Gray, Reese and Johnson and then Johnson lunged or rushed Ellis, trying to get his gun. It was at that time while Ellis was trying to get Johnson off of him that the gun went oft the bullet striking Johnson.

¶6. At the end of the State's case, Ellis moved for a directed verdict arguing that the State failed to prove the necessary elements of "deliberate design murder" and "conspiracy to commit murder." The trial court denied this motion. Ellis did not put on any evidence. Ellis was found guilty on both counts. Ellis filed a motion for a JNOV, or in the alternative a motion for a new trial. The trial court denied these motions, and Ellis perfected this appeal.

## II.

¶7. The legal sufficiency of the States evidence may be tested by a motion for a directed verdict, a request for a peremptory instruction and a motion for a JNOV; the standard of review of each is essentially the same. ***Butler v. State,*** 544 So.2d 816, 819 (Miss. 1989). In addition to viewing the evidence in the light most favorable to the State, this Court must accept as true all the evidence which supports the verdict without weighing the credibility of the evidence on appeal. ***Davis v. State,*** 568 So. 2d 277, 281 (Miss. 1990); ***Malone v. State,*** 486 So. 2d 360, 366 (Miss. 1986).

### A. Conspiracy

¶8. Ellis argues that there is no evidence of a meeting of the minds between Ellis and Holden to commit murder. The only evidence of a conspiracy includes the testimony of Reese as to the conversation between Ellis and Holden before and after the shooting. Reese testified that before the shooting, while they were all still in the car, Holden asked Ellis, "Are you going to do that?" Ellis responded, "Yeah, I'm fixing to do that." After the shooting, Reese testified that he and Ellis ran back to the car when Holden stated, "Did you do that?" Ellis responded, 'Yeah, I got that m*****f*****."(expletive deleted.)

¶9. The other evidence of a conspiracy was an insurance check for $10,000 payable to Holden for the life of Johnson. Ellis argues that even if taken in the light most favorable to the State, this does not constitute a "union of the minds" of a common scheme or plan to murder Johnson. We disagree.

¶10. This Court has held many times that conspiracy may be proven entirely by circumstantial evidence. *Franklin v. State,* 676 So.2d 287, 288 (Miss. 1996) (collecting authorities). To prove a conspiracy the State must show that two or more people agreed to accomplish an unlawful purpose or agreed to accomplish a lawful purpose unlawfully. Miss. Code Ann. § 97-1-1 (2000); *Clayton v. State,* 582 So.2d 1019, 1022 (Miss. 1991); *Griffin v. State,* 480 So.2d 1124, 1126 (Miss. 1985).

¶11. Here there is testimony that three individuals were riding in the car together. The driver asks one of the passengers is he about to "do that," to which the passenger replies that he is about to "do that" now. The driver waits in the car while the passengers go "do that." Upon returning to the car the driver asked the first passenger if he had done that, to which he replied in the affirmative. The driver is shown to have a motive, $10,000 for agreeing that the action take place. In our view, that is enough circumstantial evidence to show a meeting of the minds of the parties to "do that." Ellis's response to the question whether "that" had been done that he had killed the expletive informs us on the question what "that" meant. These facts would allow a rational jury to find beyond a reasonable doubt that Ellis and Holden had conspired to kill Johnson.

### B. Murder

¶12. Ellis argues that the State also failed to prove deliberate design by him to kill Johnson. Ellis reasserts the testimony of Gray, Reeses prior statement, and his police statement, contending that at best he may be found guilty of "heat of passion" manslaughter. We disagree.

¶13. In our view, taking the evidence in the light most favorable to the State, a reasonable juror could find that (1) the conversations between Ellis and Holden, (2) Ellis seeking out the victim, and (3) shooting him through the screen door was a deliberate design to commit murder. Miss. Code Ann. § 97-3-19( 1)(a)( 1994); see e.g.*, Jones v. State,* 710 So.2d 870, 878 (Miss. 1998).

### III.

¶14. Ellis requested a lesser-related offense instruction, D-9, which provided that the jury may find him guilty of "heat of passion" manslaughter instead of murder. The trial court denied this instruction.

¶15. A defendant is entitled to have instructions on his theory of the case presented, even though the evidence that supports it is weak, inconsistent, or of doubtful credibility. *Giles v. State,* 650 So.2d 846, 854 (Miss. 1995). A lesser-related offense instruction should be granted unless the trial judge can say, taking the evidence in the light most favorably to the accused that no reasonable jury could find the defendant guilty of the lesser related offense. *Id*.; *see also* *Ormond v. State,* 599 So.2d 951, 961 (Miss. 1992) (*Mease v. State,* 539 So.2d 1324, 1330 (Miss. 1989). Instructions are not given unless supported by the evidence. However, if any evidence in the record can reasonably be inferred to support a lesser offense, then the trial court should give the lesser-related offense instruction. *Perry v. State,* 637 So.2d 871, 877 (Miss. 1994); *Mease,* 539 So. 2d at 1329-34.

¶16. Ellis argues that the instruction was supported by the testimony of Gray and by Ellis's own statement to the police. He contends that, viewed in the light most favorable to him, this Court will see that there are

reasonable inferences to suggest "heat of passion" manslaughter instead of "deliberate design murder." Upon a careful reading of Gray's testimony and Ellis's statement, the evidence does not support the "heat of passion" manslaughter instruction.

When Ellis and Gray arrived at the door to Johnson's apartment, Gray called Johnson to the door. Johnson came to the door with a gun, but laid it on the couch when he recognized Gray. Though Johnson opened the door to the apartment, the screen door remained closed. Ellis told Johnson he owed Ellis some drug money, and the two men argued about the money for about five minutes. Ellis then told Gray to step back, and Ellis shot Johnson through the screen door. At the time Ellis shot Johnson, Johnson's hands were in the air. Johnson made no threatening gestures or motions toward Ellis or Gray. From this testimony, it is clear that the mere fact that the defendant and victim were engaged in a dispute is insufficient to support a "heat of passion" jury instruction.

¶17. Ellis's statement to police is an even thinner thread with which to support a "heat of passion" instruction. Ellis told police that he accompanied Gray and Reese to Johnson's apartment because Gray and Reese wanted to use Ellis's gun to intimidate Johnson into paying them money Johnson owed them. According to Ellis, Johnson lunged at Ellis in an effort to pull the gun away from Ellis, and during the tussle the gun went off. Ellis's version of Johnson's death simply does not support the "heat of passion" instruction. Rather, Ellis's statement indicates that the shooting was, at best, an accident, not a killing committed in the "heat of passion."

¶18. Ellis contends that the fact that there was arguing, lunging and tussling supports the "heat of passion" instruction. The fact that Ellis and Johnson argued over the money, taken together with the uncontroverted physical evidence in the record, simply does not support Ellis's theory that he killed Johnson in state of uncontrollable anger, rage or hatred. Particularly telling is the evidence, uncontroverted by the defense, that Johnson was shot in the back. Also uncontroverted is the evidence that the projectile which killed Johnson first went through an intermediary object before hitting Johnson. Dr. Rodrigo Galvez, the State's expert forensic pathologist, stated that the intermediary object could have been a screen door. The evidence that Ellis shot Johnson through the screen door is corroborated by Gray's testimony as well as by pictures of the screen door which were admitted as exhibits. Also uncontroverted was the physical evidence of the projectile, recovered inside Johnson's apartment, and the paper wadding, recovered outside the apartment on the porch. There is absolutely no testimony in the record that Johnson ever picked up his gun or that he made aggressive or threatening movements towards Ellis. In fact, three witnesses, Reese, Gray, and Berry, testified to the contrary.

¶19. Taking the evidence in the record in the light most favorable to Ellis, no reasonable jury could find Ellis guilty of "heat of passion" manslaughter. Therefore, the trial judge correctly refused to instruct the jury as requested by Ellis.

## IV.

¶20. During the testimony of Williams, a photocopy of a $10,000 check from a life insurance company payable to Holden for the life of Johnson, exhibit 14, was introduced. Ellis argues that there was never any link or connection between the life insurance proceeds and the alleged conspiracy. There was no evidence that Ellis received any of the proceeds. Ellis argues that this evidence was irrelevant or if it was relevant it violated Miss. R. Evid. 403. The State suggests that the check was admissible to show motive. We agree with the State. As we stated previously, a conspiracy may be proved by circumstantial evidence. Here the

insurance proceeds should a possible motive of a co-conspirator, namely Holden. It is simply further circumstantial evidence that a conspiracy existed. Also, it presented a possible objective of the conspiracy.

## V.

¶21. Ellis argues that Gary's and Reeses testimony was impeached by prior inconsistent statements and the jury should have been properly instructed. *Ferrill v. State,* 643 So.2d 501 (Miss. 1994); *McGee v. State,* 608 So.2d 1129 (Miss. 1992). Ellis argues that the trial court erroneously refused to give Defense Instruction D-5 which provided:

> The testimony of a witness or witnesses may be discredited or impeached by showing that on a prior occasion they have made a statement which is now inconsistent with or contradictory to their testimony in this case. In order to have this effect, the inconsistent or contradictory prior statement must involve matter which is material to the issues in this case.

> The prior statement of the witness or witnesses can be considered by you only for the purpose of determining the weight or believability that you give to the testimony of the witness or witnesses that made them. You may not consider the prior statement as proving the guilt or innocence of the defendant.

The trial court in denying D-5 stated:

> D-5 is confusing and.., it would not be a proper guide for the jury, and also it would be a comment on the evidence and, further, because the Court is already properly instructing the jury in C-I concerning the weight that their testimony deserves and the evaluation and the credibility of the witnesses, and it discusses inconsistencies or discrepancies in the testimony . . .

C-I provided:

> You, as jurors, are the sole judges of the credibility of the witnesses and the weight their testimony deserves.

> You should carefully scrutinize all testimony given, the circumstances under which each witness has testified, and every matter in evidence which tends to show whether a witness is worthy of belief. Consider each witness intelligence, state of mind, demeanor and manner while on the stand. Consider the witness ability to observe the matters as to which he or she has testified, and whether he or she impresses you as having an accurate recollection of these matter. Consider the extent to which it is contradicted by other evidence in the case. Inconsistencies or discrepancies in the testimony of a witness, or between the testimony of different witnesses, may or may not cause the **jury** to discredit such testimony. Two or more persons witnessing an incident or transaction may see or hear it differently; and innocent misrecollection, like failure of recollection, is not an uncommon experience. In weighing the effect of a discrepancy, always consider whether it pertains to a matter of importance or an unimportant detail, and whether the discrepancy results from innocent error or intentional falsehood. After making your own judgment, you will give the testimony of each witness such credibility, if any, as you may think it deserves.

(emphasis added).

¶22. The trial court committed harmless error by not allowing D-5. Our law is clear. Jury instructions are read together and not individually, and the trial court is not required to give the same instruction on the point of law in different verbiage when that instruction is covered by other instruction. *Walker v. State,* 671 So.2d 581, 586 (Miss. 1995); *Cunningham v. State* 467 So.2d 902, 906 (Miss. 1985).

¶23. It is clear that Reese's and Gray's testimony was impeached by their prior inconsistent statements. Under our law a defendant is entitled to an inconsistent statement instruction where a witness has given a prior inconsistent statement. *Ferrill v. State,* 643 So.2d at 501. Thus, the trial court erred by not allowing D-5.

¶24. It is arguable that C-1 adequately conveys the principles of the first paragraph in D-5 sufficiently such that we can say that there was no abuse of discretion in that regard. The second paragraph of D-5, however, is not adequately represented in C-I. This error is harmless, nevertheless, because, if the jury considered the truth of the prior statement it was to Ellis's advantage. Reese's prior statement supported Ellis's theory of the case.

## VI.

¶25. The admissibility of the photographs rests within the discretion of trial. *Jackson v. State,* 672 So.2d 1213, 1230 (Miss. 1996); *Mackbee v. State,* 575 So.2d 16, 31 (Miss. 1990). During the testimony of the pathologist, Dr. Rodrigo Galvez, and during the testimony of Detective John Williams ("Williams"), the trial court allowed the State to introduce two pictures. Ellis contends that the pictures were cumulative, had no probative value and were designed to unfairly prejudice and inflame the passions of the jury.

¶26. Exhibit 6 is a photograph of the floor of Johnson's apartment with what was testified to be internal body material or organs lying on the floor. Ellis argues that the fact blood and bodily material were found inside the apartment had already been testified to by Williams adequately negated the need for the photo. The State again brought the picture to the jury's attention after Officer Walton McJordan described the location of the "organic material."

¶27. The second photo, Exhibit 19, was taken during the autopsy of Johnson. The photo depicts the nude and discolored body of Johnson.

¶28. The dispositive question is "whether the probative value of. . . [the] photographs is substantially outweighed by the danger of unfair prejudice." *Parker v. State,* 514 So.2d 767, 771 n.3 (Miss. 1986) (citing Miss. R. Evid. 403.) We have repeatedly held that "the fact that a photograph . . . might arouse the emotions of the jurors, does not of itself render it incompetent evidence as long as its introduction serves some useful evidentiary purpose." *Kniep v. State*, 525 So.2d 385, 388 (Miss. 1988) (quoting *Kelly v. State,* 463 So.2d 1070, 1074 (Miss.1985)). We reiterated this point in *Marks v. State,* 532 So.2d 976, 980 (Miss.1988), by holding:

> We will not reverse a lower court on the ground that the photograph of the deceased were admitted into evidence unless the lower court abused its discretion by admitting photographs with no probative value except to inflame the jury.

Here, the trial court ruled that both photos were "probative and . . . not unfairly prejudicial to [Ellis]."

¶29. The trial court did not err by admitting the photos. The State used exhibit 6 to show the scene as it

was found, it was used to supplement Detective Williams's testimony of the crime scene. Exhibit 19 was admitted after a long and descriptive discussion by Dr. Galvez of the autopsy he performed. Therefore, although the pictures were unpleasant, they had some probative evidentiary purpose.

### VII.

¶30. We affirm the trial court's decision to refuse the lesser-related offense instruction. Also, we find that there was sufficient evidence to prove a conspiracy to commit murder; therefore, we affirm as to that issue. Thus, the judgment of the Hinds County Circuit Court is affirmed.

¶31. **COUNT I: CONVICTION OF CONSPIRACY AND SENTENCE OF 20 YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS AFFIRMED. SENTENCE IN COUNT I IS TO RUN CONSECUTIVE WITH THE SENTENCE IN COUNT II.**

**COUNT II: CONVICTION OF MURDER AND SENTENCE OF LIFE IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS AFFIRMED. APPELLANT SHALL RECEIVE CREDIT FOR TIME SERVED.**

> **PRATHER, C.J., PITTMAN, P.J., WALLER, COBB AND DIAZ, JJ., CONCUR. BANKS, P.J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY McRAE AND MILLS, JJ.**

> **BANKS, PRESIDING JUSTICE, DISSENTING:**

¶32. In this case we are, once again, presented with the issue of whether it was appropriate to deny a lesser-related offense instruction. Because the majority creates a higher threshold for granting a lesser-related offense instruction than our precedents dictate, I respectfully dissent.

¶33. In my view, the trial court erred in refusing Ellis's instruction on "heat of passion" manslaughter. A lesser-related instruction should be granted unless the trial judge can say, taking the evidence in the light most favorable to the accused, that no reasonable jury could find the defendant guilty of the lesser-related offense. *Giles v. State*, 650 So.2d 846, 854 (Miss. 1995); *see also* *Ormond v. State*, 599 So.2d 951, 961 (Miss. 1992); *Mease v. State*, 539 So.2d 1324, 1330 (Miss. 1989). Instructions are not given unless supported by the evidence. However, if any evidence in the record can reasonably be inferred to support a lesser offense, then the trial court should give the lesser-related offense instruction. *Perry v. State*, 637 So.2d 871, 877 (Miss. 1994).

¶34. Reviewing the evidence in the light most favorable to Ellis, there is evidence for an instruction on "heat of passion" manslaughter. According to Ellis, (1) an argument ensued between Gray, Reese, Johnson and him, (2) Johnson lunged or rushed toward Ellis attempting to get Ellis's gun, (3) while Ellis was trying to get Johnson off him the gun went off and the bullet struck Johnson. Gray and Reese, in prior statements, claimed that Ellis and Johnson argued before Ellis shot Johnson. Reese, in the same prior statement, maintained that Johnson rushed Ellis before the gun discharged.[1]

¶35. This Court has held that in a criminal prosecution the jury may accept the testimony of some witnesses and reject that of others and that it may accept in part and reject in part the evidence on behalf of the State or on behalf of the accused. *Watson v. State*, 722 So.2d 475, 479 (Miss. 1998). Although there is

substantial evidence against the theory of manslaughter, it is for the jury to decide that the facts of this case do not support "heat of passion."

¶36. I am of the opinion that in viewing the evidence in the light most favorable to Ellis a reasonable jury could find "heat of passion" manslaughter; thus, this lesser-related offense instruction should have been granted. For this reason, I would reverse on this issue and remand for a new trial.

**McRAE AND MILLS, JJ., JOIN THIS OPINION.**

1. The two previous statements by Gray and Reese were prior inconsistent statements not given under oath at a trial or other proceeding; and therefore, they would not normally be considered as substantive evidence. *See, Hall v. State*, 691 So. 2d 415, 420 (Miss. 1997); M.R.E. 105, 613 & 801(c) & (d). Ellis proffered an instruction to this effect but that proffer was met by an objection from the State which contended that the statements, having been discussed during the testimony of the declarants as to which parts were true and which were untrue, should be considered for all purposes. The trial court acquiesced in this argument and denied the instruction. Thus, for present purposes in this case, the statements should be considered substantively.