856 So.2d 513 (2003)
Roosevelt MAXWELL a/k/a Roosevelt Maxwell, Jr., Appellant,
v.
STATE of Mississippi, Appellee.
No. 2001-KA-01583-COA.
Court of Appeals of Mississippi.
April 29, 2003.
Rehearing Denied July 29, 2003.
*514 Jason E. Tate, McComb, attorney for appellant.
Office of the Attorney General by Deirdre McCrory, attorney for appellee.
EN BANC.
IRVING, J., for the court.
¶ 1. Roosevelt Maxwell, a/k/a Roosevelt Maxwell, Jr., was convicted in the Circuit Court of Lincoln County on charges of murder and shooting into a dwelling. Feeling aggrieved by the judgment of conviction, Maxwell has perfected this appeal in which he raises three issues: (1) whether the trial court erred when it refused to grant his requested lesser-included offense jury instruction on manslaughter, (2) whether he was denied effective assistance of counsel, and (3) whether the verdict of the jury is against the overwhelming evidence.
¶ 2. We find no merit in these assertions of error; therefore, we affirm the decision of the trial court.

FACTS
¶ 3. On March 3, 2000, at approximately 12:58 in the afternoon, several gunshots were fired in the Blades' Trailer Park in Lincoln County, Mississippi. Investigator Lance Falvey of the Lincoln County Sheriff's Department was dispatched to the trailer park at the corner of Booker and Washington Avenue. When he arrived, he observed both a number of people gathered in the street and Emergency Medical Services personnel on the scene. Upon closer examination, he observed Tonya Smith, who had been shot in the head, lying on the floor of her small trailer home.
¶ 4. Falvey inquired whether anyone from the crowd knew what had happened. Someone blurted out the name "Rockingham," and the officer broadcasted this name through his dispatch radio. Shortly thereafter, another officer presented himself on the radio, advised all units to disregard the earlier "Rockingham" information, and announced he had the actual name of the suspect. That name was Roosevelt Maxwell.
¶ 5. After securing the area and taking initial photographs of the crime scene, Falvey investigated the trailer and found a trace of daylight piercing through a small hole in the trailer's fiberglass canopy. He determined this opening to be a bullet hole. Falvey found no other holes in the trailer's walls, no shell casings, nor a murder weapon.
¶ 6. After more officers had arrived, Falvey investigated a trail where the suspect allegedly ran after the shooting. The trail led the officer to the house of Barry Wade. Falvey noticed that the back door of the house was kicked it. After surveying the outside of the premises and determining that Wade was not at his residence, Falvey returned to the crime scene.
¶ 7. Approximately an hour after the incident, officers found Maxwell at his mother's house and arrested him. Upon arrest, Maxwell was wearing a pullover shirt and black jeans. He appeared dirty with bits of leaves and trash on his person. Also, he was sweating profusely. Initial eyewitness accounts indicated that the suspect was wearing a green and yellow striped shirt with a pair of green shorts. After his arrest, Maxwell was brought to the crime scene.
*515 ¶ 8. While at the crime scene, a gun residue test was administered to Maxwell by an officer. Maxwell, soon thereafter, asked to speak solely to Arluster Henderson, the chief of police for the city of Brookhaven. Maxwell asked Henderson what had transpired, and Henderson informed him that witnesses had identified Maxwell as the shooter of a lady in the trailer park. Maxwell responded, "I only shot in the air three or four times."
¶ 9. Maxwell was subsequently indicted for, and convicted of, the murder of Tonya and of shooting into a dwelling.

ANALYSIS AND DISCUSSION OF THE ISSUES

1. The Lesser-Included Offense Instruction
¶ 10. Maxwell argues that the trial court erred by refusing to grant his requested lesser-included offense jury instruction for manslaughter. While acknowledging that he voluntarily refused to allow the manslaughter instruction to be submitted to the jury, Maxwell, nevertheless, proclaims that the trial court was ultimately responsible for refusing to submit the manslaughter instruction to the jury. He therefore explains that since the jury was not allowed to consider the manslaughter instruction, his case should be reversed and remanded.
¶ 11. Our supreme court has often stated that a defendant is entitled to have his theory of defense presented to the jury. Drake v. State, 800 So.2d 508, 518 (¶ 42) (Miss.2001) (citing Triplett v. State, 672 So.2d 1184, 1186 (Miss.1996)). However, the same court has also recognized that a defendant's act of refusing an instruction on a lesser-included offense can sometimes be a sound trial tactic on the part of the defense. See Hiter v. State, 660 So.2d 961 (Miss.1995).
¶ 12. In Hiter, the defendant declined a manslaughter instruction and pursued a strategy that forced the jury to choose between convicting the defendant of murder or accepting the proffered theory of self-defense. Hiter, 660 So.2d at 965. The Hiter decision made absolutely clear that, where defense counsel's objection to a manslaughter instruction is part of trial strategy, the mere fact that there was sufficient evidence on the record to support the manslaughter instruction does not require reversal:
It is clear from the record of facts that there was an evidentiary basis for a manslaughter instruction. Despite the strong evidentiary basis for the submission of such an instruction, it is equally clear from the record that counsel purposefully prevented the jury from considering the lesser included offense.... Counsel's decision to refuse a manslaughter instruction, coupled with his decision to employ a defense based entirely on self-defense, was apparently his chosen strategy of representation. Attorneys are permitted wide latitude in their choice and employment of defense strategy.

Id. (emphasis added).
¶ 13. The trial judge in this case properly refused to give an instruction on the lesser-included offense of manslaughter since Maxwell and his counsel objected to such an instruction. In the case-at-bar, as Maxwell's counsel and the prosecutor reviewed the proposed jury instructions, Maxwell expressly stated that he did not want a manslaughter instruction given. His intentions were also communicated through his counsel. Even after Maxwell had refused to allow the instruction to be given, the trial judge revisited the issue, and again, Maxwell was unswerving in his *516 position that the instruction should not be given. Maxwell's decision was clearly indicative of a strategy to prevent the jury from returning what he feared may have been a compromised verdict on the murder charge. He gambled and lost. He cannot now place blame on the trial court by asserting that the trial judge should have given the instruction anyway because the trial judge is obligated to give instructions which are undergirded with an evidentiary basis. This assignment of error is without merit.

2. Ineffective Assistance of Counsel
¶ 14. Maxwell complains that his attorney's assistance was deficient because she failed to request a manslaughter instruction. Moreover, Maxwell asserts that his counsel's assistance was ineffective because she failed to make a Miranda[1] objection to Henderson's testimony regarding Maxwell's incriminating statement.
¶ 15. Our standard of review for a claim of ineffective assistance of counsel is a two-part test: the defendant must prove, under the totality of the circumstances, that (1) his attorney's performance was deficient and (2) the deficiency deprived the defendant of a fair trial. Jackson v. State, 815 So.2d 1196, 1200 (¶ 8) (Miss.2002) (citing Hiter, 660 So.2d at 965 (Miss.1995)). This review is highly deferential to the attorney, with a strong presumption that the attorney's conduct fell within the wide range of reasonable professional assistance. Id. With respect to the overall performance of the attorney, "counsel's choice of whether or not to file certain motions, call witnesses, ask certain questions, or make certain objections fall within the ambit of trial strategy" and cannot give rise to an ineffective assistance of counsel claim. Id. (citing Cole v. State, 666 So.2d 767, 777 (Miss.1995)).
¶ 16. A defendant claiming ineffective assistance of counsel has the burden of proving not only that counsel's performance was deficient, but also that he was prejudiced thereby. Jackson, 815 So.2d at 1200 (¶ 9) (citing Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)). Additionally, the defendant must show that there is a reasonable probability that, but for his attorney's errors, he would have received a different result in the trial court. Id. (citing Nicolaou v. State, 612 So.2d 1080, 1086 (Miss.1992)). Finally, the court, based upon the totality of the circumstances, must then determine whether counsel's performance was both deficient and prejudicial. Id. (citing Carney v. State, 525 So.2d 776, 780 (Miss. 1988)).
¶ 17. We do not find that Maxwell's counsel was ineffective in the assistance provided in Maxwell's defense. Maxwell's counsel's failure to request a jury instruction for manslaughter did not constitute ineffective assistance. As we enunciated earlier, Maxwell himself made the determination that a manslaughter instruction should not be requested, and that decision was purely strategic. Moreover, his counsel's failure to make a Miranda objection to Henderson's testimony does not amount to a deficiency in his counsel's representation. Henderson did not interrogate Maxwell. It was Maxwell who asked to speak with Henderson. After doing so, and in response to the answer Henderson gave to Maxwell's question, Maxwell volunteered the statement that he shot into the air. *517 There was no basis for a Miranda challenge.

3. Motion for Directed Verdict
¶ 18. The final issue Maxwell raises on appeal is whether the trial court erred in denying his motion for directed verdict. The legal sufficiency of the State's evidence may be tested by a motion for a directed verdict, a request for a peremptory instruction, and a motion for a JNOV; the standard of review of each is essentially the same. Dickey v. State, 819 So.2d 1253, 1256 (¶ 9) (Miss.2002) (citing Ellis v. State, 778 So.2d 114, 117 (¶ 7) (Miss.2000)). The evidence must be viewed in the light most favorable to the State and this Court must accept as true all the evidence which supports the guilty verdict without weighing the credibility of the evidence. Id. The prosecution receives the benefit of all favorable inferences that may reasonably be drawn from the evidence. Id. (citing McFee v. State, 511 So.2d 130, 133-34 (Miss.1987)). This Court will reverse only where reasonable and fair-minded jurors could only find the accused not guilty. Id. (citing Wetz v. State, 503 So.2d 803, 808 (Miss.1987)).
¶ 19. Here, the evidence offered by the State is such that fair-minded jurors could find Maxwell guilty as charged. Anthony Blue testified that he was present during the incident, that he witnessed the shooting, and that he communicated to the police that Maxwell had killed Tonya. Michael Beasley testified that he saw Maxwell run behind Tonya's trailer immediately after the shooting. Kevin Butler, a visitor at Tonya's trailer at the time she was shot, testified that the shots came from the direction where he had seen Maxwell standing shortly before the shots were fired.
¶ 20. Lance Falvey, a deputy sheriff, gave testimony about the crime scene where he discovered a bullet hole in the trailer. He investigated the alleged escape path of the suspect where he eventually came to the home of Barry Wade. The back door of Wade's home was kicked in. Falvey testified that Maxwell appeared very dirty with bits of leaves and trash on his person and that Maxwell was sweating profusely on a cool afternoon. Barry Wade verified that the back door of his home was kicked in and that a pair of black pants was taken from his residence.
¶ 21. Bruce Jackson, an investigator, testified that he administered a gun residue test to Maxwell. David Whitehead, the forensic scientist who reviewed the residue test given to Maxwell, testified that Maxwell had "been in the environment of a discharged weapon." Chief Henderson testified that upon his informing Maxwell that witnesses had indicated that Maxwell had shot Tonya, Maxwell's response was "I only shot in the air three or four times."
¶ 22. We find that the evidence of Maxwell's guilt was overwhelming. Therefore, we hold that the trial judge properly refused to direct a verdict in Maxwell's favor. The judgement of the trial court is affirmed.
¶ 23. THE JUDGMENT OF THE CIRCUIT COURT OF LINCOLN COUNTY OF CONVICTION OF COUNT ONE, MURDER, AND SENTENCE OF LIFE; AND COUNT TWO, SHOOTING INTO A DWELLING, AND SENTENCE OF TEN YEARS ALL IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, WITH THE SENTENCES TO RUN CONCURRENTLY AND PAY $3,365 IN RESTITUTION TO THE CRIME VICTIM'S COMPENSATION FUND IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO LINCOLN COUNTY.
*518 McMILLIN, C.J., KING AND SOUTHWICK, P.JJ., BRIDGES, THOMAS, LEE, MYERS AND CHANDLER, JJ., CONCUR. GRIFFIS, J., NOT PARTICIPATING.
NOTES
[1] In Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), the United States Supreme Court held that police are required to apprise a criminal defendant of his right to an attorney and to have the attorney present during custodial interrogation so as to protect the defendant against self incrimination.