# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2001-KA-00865-SCT

*VINCENT WHEELER a/k/a VINCENT M. WHEELER*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 5/22/2001 |
| TRIAL JUDGE: | HON. RICHARD D. BOWEN |
| COURT FROM WHICH APPEALED: | LEE COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | WILLIAM WAYNE HOUSLEY |
| ATTORNEYS FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: JOHN R. HENRY |
| DISTRICT ATTORNEY: | JOHN RICHARD YOUNG |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED- 09/19/2002 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 10/10/2002 |

**BEFORE McRAE, P.J., WALLER AND COBB, JJ.**

**McRAE, PRESIDING JUSTICE, FOR THE COURT:**

¶1. Vincent M. Wheeler was tried and convicted in the Lee County Circuit Court of robbery, burglary, and aggravated assault of James Clark. Wheeler was ordered to make restitution to Clark's estate in the amount of $7,500.00 and sentenced to serve fifteen years for each offense in the custody of the Mississippi Department of Corrections. On appeal, Wheeler asserts that (1) there was not sufficient evidence to convict him for robbery and burglary; (2) the trial court erred in denying his motions for directed verdict and for a new trial; (3) the trial court erred in allowing photographs, a photographic lineup, and an out-of-court identification into evidence; (4) he was denied his right to a speedy trial and was subjected to double jeopardy; (5) the trial court erred in not suppressing his statement to police; (6) the trial court erred in not granting a mistrial where witnesses made prejudicial statements; and (7) the cumulative effect of these errors greatly prejudiced him and therefore denied him a fair trial.

¶2. We find that the evidence was sufficient to support the convictions of robbery and burglary; that the trial court did not err in denying a directed verdict and new trial and in not granting a mistrial; that the trial court made no harmful evidentiary errors; that Wheeler's right to a speedy trial was not denied; that he was not subjected to double jeopardy; and that there were no cumulative errors which denied him a fair trial.

Therefore, we affirm the convictions of robbery, burglary, and aggravated assault.

## FACTS

¶3. Clark was an elderly man who lived by himself. He had three daughters and a granddaughter who lived nearby and checked on him daily. Clark kept large sums of money on his person or in a hole in his mattress in his house. His two daughters, Barbara and Dorothy Copeland, and one granddaughter knew about the cash he kept on hand. Dorothy's boyfriend, Ozell Williams, apparently overheard Barbara and Dorothy discussing their father's aversion to banks and the large sums of cash he kept in his house. On May 11, 1999, Clark told Dorothy that Williams and another man came into his house in the middle of the night, hit him in the face, and took $1,500.00 from his wallet. Dorothy filed a police report to that effect. Clark and his granddaughter had recently counted his money; according to her, he had between $7,000 and $9,000. Williams was arrested four days later on different charges.

¶4. Late at night or in the early morning that Williams was arrested, Clark was severely beaten in his home, and his television and cash were taken. The time of the attack is unknown, but Williams was in jail from 1:00 a.m. until 4:52 a.m. and was not a suspect. The morning of the attack, Clark's granddaughter found him lying on the floor in a puddle of blood, with an extremely swollen face and several of his teeth knocked out. Clark was hospitalized for a couple of weeks and was then moved to a nursing home. He died a few months after the attack.

¶5. Wheeler was identified by four witnesses as being one of the men who was attempting to sell Clark's television around 6:00 a.m. the morning of the attack. He first attempted to sell the television to Clark's daughter, Barbara. Then he approached the Buford sisters, and one of them bought the television. The other later identified him through a photographic lineup. Wheeler was brought into the police station a few days after the incident and gave a statement to police admitting that he beat Clark and took the television from his home.

¶6. Wheeler was originally indicted for robbery, burglary and aggravated assault. As a result of the injuries sustained, Clark was placed in a nursing home and subsequently died. The prosecution then obtained an indictment for capital murder, and the trial court retired the original three-count indictment. The capital murder indictment was later retired, and the original indictment was reinstated. Wheeler was found guilty on all three counts and was sentenced to serve fifteen years for each crime. The fifteen-year sentence for burglary is to run consecutively with the fifteen-year sentence for robbery, and the fifteen-year sentence for aggravated assault is to run concurrently with the sentence for robbery.

## DISCUSSION

### I. WHETHER SUFFICIENT EVIDENCE WAS PRESENTED TO CONVICT WHEELER ON THE INDICTED CHARGE OF ROBBERY.

¶7. The prosecution was required to prove beyond a reasonable doubt each element of robbery. Miss. Code Ann. § 97-3-73 (2000) provides that the crime of robbery is committed by a "person who shall feloniously take the personal property of another, in his presence or from his person and against his will, by violence to his person or by putting such person in fear of some immediate injury to his person . . . . " The indictment alleged that the property was taken from Clark "against his will by putting [the] victim in fear of some immediate injury to his person."

¶8. Wheeler argues that the prosecution did not prove beyond a reasonable doubt that he took the television from Clark's person or in his presence by putting him in fear of some immediate injury. He submits that his statement to police and the testimony of witnesses that he was in possession of Clark's television was the only evidence connecting him to the crime and that all that this evidence showed was that "a couple of blows were passed and then the TV was taken." Wheeler submits that "Mr. Clark would not have been conscious or in fear of other injury." He contends that the most that prosecution has proven is receiving stolen property.

¶9. Wheeler relies upon *Clayton v. State*, 759 So.2d 1169, 1170 (Miss. 1999), in which we found no evidence that the victim was in immediate fear of personal injury until after her purse was taken. He contends that since Clark did not see him take the television, he was not in immediate fear of personal injury. We are not swayed by this argument. In fact it is appalling. There is nothing in Miss. Code Ann. § 97-3-73 that suggests that the victim must be aware that his or her personal property is being taken, and certainly a victim's lack of awareness due to the perpetrator's actions, such as Wheeler admittedly hitting Clark, does not take Wheeler's actions outside of the robbery statute. We have held that "robbing a corpse in close proximity to the death of the victim is still robbery." *Arthur v. State*, 735 So.2d 213, 219 (Miss. 1999). Likewise, rendering a person unconscious and then robbing him is also robbery within Miss. Code Ann. § 97-3-73.

¶10. In his statement, Wheeler averred that Clark was asleep when he got inside the house. He also admitted that Clark woke up and that he "hit him and knocked him back into his chair." Wheeler's willful attack on Clark and rendering him unconscious does not make the subsequent action of stealing Clark's television and/or cash something less than robbery. *See Mackbee v. State*, 575 So.2d 16, 36 (Miss. 1990). This was not a pick-pocket situation. Wheeler admitted to using violence and force and inflicting injury. Based on the evidence, namely, Wheeler's admissions, a reasonable jury could have found beyond a reasonable doubt that Clark was in immediate fear of injury and concluded that a robbery took place. Therefore, this assignment of error has no merit.

## II. WHETHER SUFFICIENT EVIDENCE WAS PRESENTED TO CONVICT WHEELER ON THE INDICTED CHARGE OF BURGLARY.

¶11. Wheeler submits that the prosecution failed to proved beyond a reasonable doubt that he committed burglary. Miss. Code Ann. § 97-17-23 (2000) states: "Every person who shall be convicted of breaking and entering the dwelling house or inner door of such dwelling house of another, whether armed with a deadly weapon or not, and whether there shall be at the time some human being in such dwelling house or not, with intent to commit some crime therein, shall be punished by imprisonment . . . . " Wheeler submits that the prosecution failed to prove that he forcibly entered Clark's dwelling and that the evidence shows that the entry was "voluntary."

¶12. In his statement to police, Wheeler said that "I had learned that there was an old man who lived there that may have had some valuable things. Once I got there I pushed the door open and went in." Even if the door was unlocked or if only slight force was needed to gain entry, such entry has been viewed as forcible for the purposes of our burglary statute. *See Wright v. State*, 540 So.2d 1, 5 (Miss. 1989).

¶13. There was no evidence that the entry was "voluntary" or not forcible. There was certainly no evidence that Clark invited Wheeler into his home, especially since Wheeler very clearly stated that Clark was asleep in a chair when got inside his house. His assumption that "an elderly gentleman would have all of his doors

locked" has no bearing either. Wheeler admitted in his statement to police that he entered Clark's home with the intent to steal his valuables. From the facts in evidence, namely, Wheeler's statement, we find that a reasonable jury could find beyond a reasonable doubt that a burglary was committed; and therefore, we find no merit in this assignment of error.

### III. WHETHER THE TRIAL COURT ERRED IN DENYING WHEELER'S MOTION FOR DIRECTED VERDICT AT THE CLOSE OF STATE'S CASE AND AGAIN AT THE CONCLUSION OF THE ENTIRE CASE AND WHETHER THE TRIAL COURT ERRED IN DENYING THE MOTION FOR NEW TRIAL.

¶14. The trial court denied Wheeler's motion for a directed verdict at the close of the prosecution's case, his renewed directed verdict motion at the conclusion of all evidence, and his motion for judgment of acquittal JNOV or for a new trial, all of which attacked the sufficiency of the evidence. Wheeler failed to specifically plead and demonstrate how the evidence was insufficient. However, upon review of the record, we find the evidence was sufficient to support a reasonable jury finding Wheeler guilty of the crimes charged. *See Sheffield v. State*, 749 So.2d 123, 125-27 (Miss. 1999). Given this evidence, we cannot say that Wheeler's convictions for these three crimes was contrary to the weight of the evidence. *See id*. at 127-28. Therefore, this assignment of error is without merit.

### IV. WHETHER THE TRIAL COURT ERRED IN ADMITTING PHOTOGRAPHS OF THE CRIME SCENE AND THE VICTIM INTO EVIDENCE.

¶15. Wheeler submits that the trial court erred in denying his "pretrial motions relating to the photographs because of duplicity, relevance, and gruesomeness and timeliness." He also states that for evidentiary reasons, the photographs should not have been admitted into evidence. He offers no support or legal authority for either of these contentions. Additionally, Wheeler offers no citation to the record to indicate said motions, and upon our own review of the record, we find no such motions were made. The only motions in the record that relate to photographs are a motion for disclosure and production and a motion to suppress photographs used in the lineup identification. These motions do not address the photographs to which Wheeler refers in this assignment of error. There was a motion made on the day of trial to exclude certain photographs that were disclosed that morning, but those photographs are not the ones at issue here. No objection on the grounds that the photographs were gruesome was made at trial.

¶16. The only objection made at trial was for lack of predicate, lack of foundation and failure of the officer who is the proper witness to introduce the photographs. The trial court overruled the objection and admitted the photographs into evidence. On appeal, Wheeler gives no support for this argument. Nevertheless, even if the photographs were not properly authenticated pursuant to Miss. R. Evid. 901, this error was harmless as the photographs are not gruesome. "The discretion of the trial judge runs toward almost unlimited admissibility regardless of the gruesomeness, repetitiveness, and the extenuation of probative value." *Walters v. State*, 720 So.2d 856, 861 (Miss.1998). Quite simply, the admission of photographs is within the sound discretion of the trial judge. *See Jackson v. State*, 684 So.2d 1213, 1230 (Miss. 1996); *Chase v. State*, 645 So.2d 829, 848 (Miss. 1994); *Hubbard v. State*, 437 So.2d 430, 437 (Miss. 1983). We find that Wheeler was not unfairly prejudiced by the admission of the photographs and that the trial court did not abuse its discretion in admitting them into evidence.

### V. WHETHER THE TRIAL COURT DEPRIVED WHEELER OF HIS RIGHT TO A SPEEDY TRIAL AND VIOLATED HIS DOUBLE JEOPARDY RIGHTS.

## A. SPEEDY TRIAL

¶17. Wheeler argues that his right to a speedy trial guaranteed by the Sixth Amendment of the U.S. Constitution and Article 3, Section 26 of the Mississippi Constitution has been violated. Further, he asserts that the State violated Miss. Code Ann. § 99-17-1(2000) which states that "[u]nless good cause be shown, and a continuance duly granted by the court, all offenses for which indictments are presented to the court shall be tried no later than two hundred seventy (270) days after the accused has been arraigned."

## 1. CONSTITUTIONAL RIGHT

¶18. The United States Supreme Court has set forth four factors to be considered when reviewing an alleged denial of the constitutional right to a speedy trial. *See **Herring v. State,*** 691 So.2d 948, 955 (Miss. 1997) (citing ***Barker v. Wingo***, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972)). Those factors are: (1) the length of delay, (2) the reason for delay, (3) whether the defendant asserted his right, and (4) whether the defendant was prejudiced by the delay. ***Id.***

### a. Length of delay

¶19. Any delay longer than eight months is presumptively prejudicial triggering an analysis of the remaining factors. *See **Jefferson v. State***, 818 So.2d 1099, 1106 (Miss. 2002) (citing ***Barker***, 407 U.S. at 530, 92 S.Ct. at 2182). The time begins to run from the date of indictment. ***Herring,*** 691 So. 2d at 955. Wheeler was originally indicted on the three counts on July 26, 1999. The trial was held as scheduled on May 21, 2001, 660 days after the first indictment. This factor is in Wheeler's favor. Now we must weigh the remaining factors. ***Jefferson***, 818 So.2d at 1106.

### b. Reason for delay

¶20. The delays were caused by changes in representation for Wheeler and various continuance motions by Wheeler. Even though the State obtained a capital murder indictment after the original indictment was retired to the files, the trial date did not change. There was no apparent delay merely because the original indictment was retired and later returned to the active files because of the capital murder indictment. These delays due to the various motions count against Wheeler, not the State. *See **State v. Magnusen***, 646 So.2d 1275, 1282 (Miss. 1994) (collecting citations).

### c. Defendant's assertion of his right

¶21. Wheeler did not assert his right to a speedy trial until April 6, 2001, and the demand was that he be tried on May 21, 2001, the date he was actually tried. Wheeler's attorney did not file the motion until May 16, 2001, five days before trial. This late demand weighs against Wheeler. *See **Giles v. State***, 650 So.2d 846, 851 (Miss. 1995) (collecting citations).

### d. Prejudice by the delay

¶22. The only prejudice that Wheeler alleges on appeal is his summary statement that the investigator was unable to locate a material witness due to the time lapse. No further information is given. The trial court found no prejudice was shown because of delays in the trial. Likewise, we see no evidence of prejudice either. Therefore, this factor weighs in favor of the State.

¶23. The only factor that weighs in Wheeler's favor is the time between his indictment and trial, and the State successfully rebutted the presumption of prejudice. *Jefferson*, 818 So.2d at 1108. In conclusion, the relevant factors and the facts of this case indicate that Wheeler's right to a speedy trial was not violated.

## 2. STATUTORY RIGHT, MISS. CODE ANN. § 99-17-1 (2000)

¶24. As noted above, the statutory period for speedy trial rights runs from the date of arraignment. *See* Miss. Code Ann. § 99-17-1 (2000). Wheeler was originally arraigned on September 8, 1999. As noted in the discussion of Wheeler's constitutional speedy trial rights, the State sufficiently met the burden of establishing good cause for the delays. *See State v. Magnusen*, 646 So.2d at 1282 Therefore, this issue is also without merit.

## B. DOUBLE JEOPARDY

¶25. Wheeler summarily states that he was subjected to double jeopardy by having to respond to two indictments. Although this argument was not raised in the proceedings below and no argument or authoritative support was given for the conclusive assignment of error, we will briefly address the merits since a substantial right is at issue. *See* Miss. R. App. P. 28(a)(3); *Fuselier v. State*, 654 So.2d 519, 522 (Miss. 1995).

¶26. Article 3, Section 22 of the Mississippi Constitution guarantees that no person "shall be twice placed in jeopardy for the same offense. . . ." In a jury trial, jeopardy attaches once the jury has been empaneled and sworn. *Simmons v. State*, 746 So.2d 302, 309 (Miss. 1999) (citing *Serfass v. United States*, 420 U.S. 377, 388, 95 S.Ct. 1055, 1063, 43 L.Ed.2d 265 (1975)). There was only one jury empaneled, and that jury found Wheeler guilty of the three counts on the reinstated indictment. Therefore, jeopardy only attached once, and this double jeopardy issue is without merit.

## VI. WHETHER THE TRIAL COURT ERRED IN NOT SUPPRESSING WHEELER'S STATEMENT.

¶27. Wheeler asserts that his statement was taken in violation of his rights guaranteed by the Fourth, Fifth, Sixth, Eighth and Fourteenth Amendments to the U.S. Constitution and Article 3, Sections 14, 26, and 28 of the Mississippi Constitution. Specifically, he submits that he did not give the statement voluntarily and that having only one officer witness the statement supports this contention.

¶28. The trial court held a suppression hearing in which the officer who took the statement testified that Wheeler was read and voluntarily waived his Fifth and Sixth Amendment rights. The officer testified that it was not unusual to not have a witness in the room when the statement was given. Wheeler chose not to testify at the hearing. The officer's testimony was not contradicted, and the trial court found that Wheeler "freely and voluntarily waived those rights." Wheeler has never given evidence or an explanation for the allegation that he did not give the statement voluntarily. Moreover, before Wheeler gave the statement, he signed a document which explicitly noted his Fifth and Sixth Amendment rights. By signing the document, Wheeler acknowledged and waived those rights. There is no indication in the record to the contrary.

¶29. Wheeler argues that his rights under the Fifth, Sixth and Fourteenth Amendments and Mississippi's equivalent constitutional sections were violated. However, little authoritative support is provided, and no argument to support the supposed violation is given. In his brief, he merely argues that the statement should be excluded pursuant to *Wong Sun v. United States*; he offers no citation. In *Wong Sun v. United*

*States*, 371 U.S. 471, 489, 83 S.Ct. 407, 418, 9 L.Ed.2d 441 (1963), a co-defendant's unsigned statement was improperly admitted into evidence, and the case was reversed since there was no corroborating evidence without the statement. **Wong Sun** does not apply here for several reasons, the most obvious being that Wheeler signed his statement and that there is corroborating testimony from witnesses who saw Wheeler and another man with Clark's television the morning it was taken.

¶30. While it may be prudent for law enforcement to have a witness or third party present during discussion and the giving of statements, we have no law that requires such. Further, we have cases in which only the suspect and one officer were present when a written statement was given. *See Sills v. State*, 634 So.2d 124 (Miss. 1994).

¶31. Finally, Wheeler offers no support for the application of the Fourth Amendment. There was no search and seizure in this case. Likewise, the Eighth Amendment argument does not apply, and he provides no support and makes no argument that Miss. Const. Article 3, Section 28, regarding cruel and unusual punishment, was violated.

¶32. We review a trial court's suppression hearing finding for "substantial credible evidence supporting it." *Nicholson v. State*, 523 So.2d 68, 71 (Miss. 1988). We find that the trial court's findings were not contrary to the overwhelming weight of the evidence, and we, therefore, affirm the admission of the statement.

## VII. WHETHER THE TRIAL COURT ERRED IN NOT SUPPRESSING THE PHOTOGRAPHIC LINEUP AND OUT OF COURT IDENTIFICATION.

¶33. The Tupelo Police Department conducted photographic lineups in which Wheeler's picture was included. Four witnesses picked Wheeler from six photographs as one of the individuals who possessed and was attempting to sell Clark's television. One of the witnesses died before the trial. Two of the witnesses, Edith Buford Smith and Barbara, testified at the suppression hearing and at trial as to the photographic lineup.

¶34. On appeal, Wheeler argues that the lineup was suggestive and that he was improperly targeted. He erroneously states that only Barbara testified as to the photographic lineup, but alleges that Barbara's testimony included hearsay statements and that her testimony was tainted. Wheeler also submits that since Barbara admitted to having only seen Wheeler at the time of the attempted sale of the television and to having seen information regarding the crime on television before the lineup, that the trial court erred in allowing her testimony and her subsequent statements at trial, citing **United States v. Russell,** 532 F.2d 1063, 1066 (6th Cir. 1976). **Russell** is inapplicable because Barbara was closer to the suspect, saw more than a profile of him, and was able to view him for a longer period of time. **Id.** Barbara's statements at trial are discussed in a subsequent section of this opinion.

¶35. Upon review of the photographs used and after hearing testimony from the two police officers who conducted the lineups and from two of the four witnesses, the trial court denied the motion to suppress finding that the lineups were not prejudicial, improper or suggestive. We agree with the trial court. All six photographs are of men who were in jail at the time and were dressed in prison attire. They are all of the same race and similar build. The photographs are all the same size. Further, the two testifying officers averred that normal procedure was followed in the actual lineups, and they corroborated the identifications made by the two testifying witnesses. Wheeler offers no authoritative support for his conclusion. We find

that the procedure employed for the photographic lineup was not suggestive or prejudicial. This assignment of error is without merit.

### VIII. WHETHER THE TRIAL COURT ERRED IN FAILING TO GRANT A MISTRIAL WHERE WITNESSES MADE PREJUDICIAL STATEMENTS.

¶36. The prosecution asked Dorothy Copeland if Williams had ever brought Wheeler to her house to which she answered in the positive. When asked how Williams introduced Wheeler to her, Dorothy responded, "Well, [Williams] and [Wheeler] was in jail once before, before this." Wheeler objected on the grounds of "[Miss. R. Evid.] 404(a) and 608 on the basis of prejudicial matters brought in - outside of 404(b)" and asked for a mistrial. The motion for mistrial was denied, and the trial judge asked if Wheeler wanted the jury instructed. Wheeler decided not to bring more attention to Dorothy's statement and stood on his motion for mistrial. On appeal, Wheeler argues that the trial court erred in allowing the comment regarding prior bad acts "over defense's (sic) objections." He stated that "[t]o allow said testimony flies in the face of justice and the well-recognized rule that allowing evidence of other bad acts should not be allowed."

¶37. First, the trial court sustained Wheeler's objections to the testimony in the presence of the jury. Further, the trial judge gave Wheeler the option of whether to admonish the jury. There is no fault in Wheeler choosing not to have the jury admonished so as to minimize the attention to the matter. However, Wheeler relies upon *King v. State,* 580 So.2d 1182, 1189 (Miss. 1991), in which we noted that only in rare circumstances do we reverse when no amount of admonition would cure the prejudicial effect of something a jury has heard. We cannot say here that admonition of the jury would not have cured the harm. While we understand Wheeler's concern with bringing more attention to the matter, the trial judge may have been able to instruct the jury as to any harmful effect of Dorothy's statement. "Absent such unusual circumstances, we proceed ordinarily on the assumption that jurors will act in good faith and will indeed follow the instructions of the court." *Id.* (citing *Weaver v. State*, 497 So.2d 1089, 1094 (Miss. 1986)). Nevertheless, we find that any harm done by Dorothy's statement was minimal and that the trial court did not abuse its discretion in denying the motion for mistrial.

¶38. Wheeler mentions that Barbara's testimony included hearsay statements, but gives no support or argument for his contention that a mistrial should have been granted regarding her testimony. Moreover, Wheeler did not make a motion for mistrial regarding her testimony. The following transpired when Barbara was questioned by the prosecution:

Q. Now who do you say is Vince?

A. That man sitting there.

Q. Is that Vincent, Wheeler, the Defendant, in this case?

A. Yeah, that's the one they said beat my father up.

Q. Okay.

A. That's the one I pointed out anyway.

MR. NEELY: We're going to object, Your Honor.

THE COURT: Objection will be sustained and the jury will be instructed to disregard that statement. Okay? What the witness said someone told her.

A. It wasn't - wasn't nobody told me. I seen him come to my house with that TV. And he was the one that beat my father up. That's the one I pointed out come to my house.

Wheeler objected again, and the trial court sustained the objection and instructed the jury to disregard the statement made about who beat Clark. The sustained objections and instruction to the jury cured any harm in the statements made by Barbara. We have been clear that a "trial judge is in the best position for determining the prejudicial effect of an objectionable remark by either the prosecutor or a witness." *Cox v. State*, 793 So.2d 591, 595 (Miss. 2001) (citing *Perkins v. State*, 600 So.2d 938, 940 (Miss. 1992)). "The jury is presumed to have followed the admonition of the trial judge to disregard the remark." *Id.* (citing *Dennis v. State*, 555 So.2d 679, 682-83 (Miss. 1989)). Also, the fact that the victim was Barbara's father and that she disliked Williams are credibility issues for the jury to weigh. *See Sheffield,* 749 So.2d at 127. We find that the trial court amply instructed the jury regarding Barbara's hearsay statements to correct any harmful effect they may have had.

### IX. WHETHER THE CUMULATIVE EFFECT OF THE AFOREMENTIONED ERRORS GREATLY PREJUDICED WHEELER AND RENDERED HIS RIGHT TO A FAIR TRIAL IMPOSSIBLE.

¶39. Wheeler summarily states that the cumulative effect of all the errors he assigns prevented him from getting a fair trial. Again, he offers no argument or authority in support of his contention. Therefore, we decline discussion as the issue is not properly before us. *See Gerrard v. State*, 619 So.2d 212, 216 (Miss. 1993) (citing *Wright v. State*, 540 So.2d 1 (Miss.1989) (claims with no citation to authority in support are not properly before the Court)). Notwithstanding, we have discussed each issue individually and find no cumulative violation of his right to a fair trial.

### CONCLUSION

¶40. We find that the trial court committed no reversible errors, that there was substantial evidence to support the convictions, and that none of Wheeler's rights were violated. Accordingly, we affirm the circuit court's judgment.

¶41. **COUNT I: CONVICTION OF ROBBERY AND SENTENCE OF FIFTEEN (15) YEARS IN A FACILITY TO BE DESIGNATED BY THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AFFIRMED. COUNT II: CONVICTION OF BURGLARY AND SENTENCE OF FIFTEEN (15) YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AFFIRMED. SENTENCE IN COUNT II TO RUN CONSECUTIVELY WITH SENTENCE IN COUNT I. COUNT III: CONVICTION OF AGGRAVATED ASSAULT AND SENTENCE TO SERVE A TERM OF FIFTEEN (15) YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AFFIRMED. SENTENCE IN COUNT III SHALL RUN CONCURRENTLY WITH SENTENCE IN COUNT I. APPELLANT IS ORDERED TO PAY COURT COSTS AND MAKE RESTITUTION OF $7500 TO THE ESTATE OF JAMES CLARK.**

**PITTMAN, C.J., SMITH, P.J., WALLER, COBB, DIAZ, EASLEY, CARLSON AND**

**GRAVES, JJ., CONCUR.**