ROBERTS, J.,
 

 for the Court:
 

 ¶ 1. Kenneth H. Harris was convicted of burglary and sentenced, as a habitual offender, to seven years in the custody of the Mississippi Department of Corrections (MDOC) without eligibility for parole or probation. Aggrieved, Harris appeals and argues that the Lincoln County Circuit Court erred when it declined to grant his motion for a judgment notwithstanding the verdict (JNOV) because there was insufficient evidence of the “breaking” element of burglary. Finding no error, we affirm.
 

 FACTS AND PROCEDURAL HISTORY
 

 ¶2. Sometime between 9:00 and 9:30 p.m. on August 14, 2009, Alan and Wanda Kent returned to their home in Brookha-ven, Mississippi. As the Kents drove closer to their home, they realized that an unfamiliar car was parked nearby. The trunk and the rear driver’s side door were open, and the car was running. Alan got out of his vehicle, but Wanda remained inside.
 

 ¶ 3. Upon closer inspection, Alan noticed that someone was behind his truck, which was parked in the carport. That person, later identified as Harris, quickly ran to his car and drove away. However, Alan memorized Harris’s license plate number, which ultimately led to Harris’s arrest. After calling the Brookhaven Police Department, Alan performed a brief inventory of the storage room attached to the house. Alan noticed that a toolbox had been stolen, and a shelf had been knocked over.
 

 ¶ 4. Harris was later indicted for burglary. He pled not guilty, and on May 13, 2010, he went to trial. The prosecution called Detective Nolan Jones of the Brook-haven Police Department as its first witness. Detective Jones testified that after Harris was arrested on August 18, 2009, Harris gave a brief statement. According to Harris’s statement, Harris had stopped at the Kents’ house to steal a weedeater, but he was interrupted before he was able to steal it. Harris denied that he went inside the Kents’ storage room. Harris also denied that he had stolen Alan’s toolbox. However, Detective Jones testified that Harris “stated that he didn’t go into the storage room, but at one point[,] he did state that he couldn’t get the light to come on in there. I don’t know if the door was locked or not on the storage room, but he did make the statement that he couldn’t get the light to come on.”
 

 ¶ 5. The prosecution called Alan as its second and final witness. Aside from his testimony regarding the events that led to his brief encounter with Harris, Alan testified that: “we always kept the [storage-room] door shut. There’s times that it may or may not be locked, depending on
 
 *756
 
 my wife or I going in and out at the end of the day, but we always keep it shut.” Furthermore, Alan testified that although a shelf had been knocked over and some of the contents had been knocked onto the floor, he could only be certain that his toolbox was missing from the storage room.
 

 ¶ 6. Alan elaborated on the status of the light fixture in his storage room. According to Alan, “[t]here’s a flourescent light on the ceiling that works sometimes. I had a short in the light, and sometimes it works and sometimes it doesn’t. We’ve had a lot of trouble with it.” Alan also testified that he was present when Detective Jones interviewed Harris. Alan went on to testify that he “heard [Harris] say something to the effect that he couldn’t see in the [storage] room, [because] it was too dark.” The prosecution rested after Alan had testified.
 

 ¶ 7. Harris opted to testify. According to Harris, he stopped at the Kents’ house because he intended to steal a weedeater that was left outside. Harris did not dispute that he was in the Kents’ driveway when they returned home. However, Harris maintained that he “did not go to the storage room.” Furthermore, Harris claimed that he did not even put his hand on the doorknob of the door to the storage room. Specifically, Harris testified as follows:
 

 Well, my plans were, actually, I was looking; looking maybe for something to take. But at the time, I didn’t take anything. I panicked. I got scared when they pulled up, and I, you know, just ran to my car. I didn’t go into their storage room. I didn’t steal anything. I didn’t knock down any shelf that Mr. Kent stated that was on the picture. I didn’t do anything. I didn’t even turn on the light switch as he stated. I didn’t do anything. I just stood right there on the side of that truck and when they pulled up I got in my car, I ran to my car and left. Wasn’t nothing taken, wasn’t nothing moved.
 

 ¶ 8. Harris rested after he testified. As previously mentioned, the jury found Harris guilty. During a bifurcated proceeding, the circuit court found that Harris qualified for enhanced sentencing as a habitual offender . pursuant to Mississippi Code Annotated section 99-19-81 (Rev. 2007). The circuit court then sentenced Harris to seven years in the custody of the MDOC. Following his unsuccessful post-trial motion for a JNOV, Harris appeals.
 

 STANDARD OF REVIEW
 

 ¶ 9. “A motion for a [JNOV] is a challenge to the sufficiency of the evidence.”
 
 Gilbert v. State,
 
 934 So.2d 330, 335 (¶ 9) (Miss.Ct.App.2006). As our Mississippi Supreme Court has stated:
 

 in considering whether the evidence is sufficient to sustain a conviction in the face of a motion for ... [a JNOV], the critical inquiry is whether the evidence shows beyond a reasonable doubt that accused committed the act charged, and that he did so under such circumstances that every element of the offense existed; and where the evidence fails to meet this test it is insufficient to support a conviction.... [T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Should the facts and inferences considered in a challenge to the sufficiency of the evidence point in favor of the defendant on any element of the offense with sufficient force that reasonable men could not have found beyond a reasonable doubt that the defendant was
 
 *757
 
 guilty, the proper remedy is for the appellate court to reverse and render.
 

 Bush v. State,
 
 895 So.2d 836, 843 (¶ 16) (Miss.2005) (internal citations and quotations omitted). However, this Court will determine that there was sufficient evidence to sustain the jury’s verdict if the evidence was “of such quality and weight that, having in mind the beyond a reasonable doubt burden of proof standard, reasonable fair-minded men in the exercise of impartial judgment might reach different conclusions on every element of the offense.”
 
 Id.
 
 (internal citations and quotations omitted).
 

 ANALYSIS
 

 ¶ 10. Harris claims there is insufficient evidence that he was guilty of burglary. Mississippi Code Annotated section 97-17-33(1) (Rev.2006) provides as follows:
 

 Every person who shall be convicted of breaking and entering, in the day or night, any ... building or private room ... in which any goods, merchandise, equipment or valuable thing shall be kept for use, sale, deposit, or transportation, with intent to steal therein, or to commit any felony ... shall be guilty of burglary, and imprisoned in the penitentiary not more than seven (7) years.
 

 Harris argues that there was insufficient evidence of the “breaking” element of burglary. According to Harris, there was no evidence that he opened the door to the shed. Harris further claims that there was no evidence the door to the shed was shut when the Kents left their home that evening.
 

 ¶ 11. To constitute burglary, a “structure must generally be closed. Otherwise the entry is merely a trespass, not a ‘breaking’ and a burglary.”
 
 Hill v. State,
 
 929 So.2d 338, 340 (¶5) (Miss.Ct.App.2005). However, “any effort, however slight, such as the turning of a [doorknob] to enter, constitutes a breaking.”
 
 Templeton v. State,
 
 725 So.2d 764, 766 (¶ 5) (Miss.1998) (quoting
 
 Alford v. State,
 
 656 So.2d 1186, 1190 (Miss.1995)). “Even if the door was unlocked or if only slight force was needed to gain entry, such entry has been viewed as forcible for the purposes of our burglary statute.”
 
 Wheeler v. State,
 
 826 So.2d 731, 735 (¶ 12) (Miss.2002).
 

 ¶ 12. Alan testified that: “we always kept the [storage-room] door shut. There’s times that it may or may not be locked, depending on my wife or I going in and out at the end of the day, but we always keep it shut.” Moreover, Alan testified that a toolbox was missing after Harris fled. Alan also testified that a shelf inside the storage room had been knocked over. The jury also heard testimony that Harris was not able to turn on a light inside the storage room. That testimony corroborated Alan’s testimony that the flourescent light inside the storage room was malfunctioning at the time.
 

 ¶ 13. Viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could have found that Harris opened the closed storage-room door, knocked over a shelf, and stole Alan’s toolbox. Consequently, the jury could have found the essential elements of burglary beyond a reasonable doubt. According to the standard of review that applies to questions regarding the sufficiency of the evidence, we are obligated to affirm. We, therefore, find no merit to this issue.
 

 ¶ 14. THE JUDGMENT OF THE LINCOLN COUNTY CIRCUIT COURT OF CONVICTION OF BURGLARY AND SENTENCE AS A HABITUAL OFFENDER OF SEVEN YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS WITHOUT ELIGIBILITY FOR PAROLE OR PROBATION IS AFFIRMED. ALL COSTS OF THIS AP
 
 *758
 
 PEAL ARE ASSESSED TO LINCOLN COUNTY.
 

 LEE, C.J., IRVING AND GRIFFIS, P.JJ., MYERS, BARNES, ISHEE, CARLTON, MAXWELL AND RUSSELL, JJ„ CONCUR.