# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2019-KA-01520-COA

**NELSON J. McLAIN A/K/A NELSON JEROME McLAIN**                    APPELLANT

**v.**

**STATE OF MISSISSIPPI**                    APPELLEE

| | |
|---|---|
| DATE OF JUDGMENT: | 08/06/2019 |
| TRIAL JUDGE: | HON. DAL WILLIAMSON |
| COURT FROM WHICH APPEALED: | JONES COUNTY CIRCUIT COURT, FIRST JUDICIAL DISTRICT |
| ATTORNEY FOR APPELLANT: | OFFICE OF STATE PUBLIC DEFENDER BY: MOLLIE MARIE McMILLIN |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: ALLISON KAY HARTMAN |
| DISTRICT ATTORNEY: | ANTHONY J. BUCKLEY |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 04/27/2021 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

### BEFORE BARNES, C.J., GREENLEE AND WESTBROOKS, JJ.

### BARNES, C.J., FOR THE COURT:

¶1.    A Jones County Circuit Court jury found Nelson McLain guilty of burglary of a dwelling.  The circuit court sentenced him to twelve years in the custody of the Mississippi Department of Corrections with nine years to serve and three years of post-release supervision.  On appeal, McLain challenges the sufficiency of the evidence, arguing that the State failed to prove that a "breaking" occurred, an essential element of burglary.  Finding no error, we affirm McClain's conviction and sentence.

### FACTS AND PROCEDURAL HISTORY

¶2.     At the time of the burglary, property owner Charles East lived in Ovett, Mississippi, with his daughter and grandson. East's daughter had been living with him since she had separated from her husband, Defendant Nelson McLain. On November 8, 2016, East had been at his hunting camp in Quitman, Mississippi. It was election day; so East left the camp to go pick up his daughter at his Ovett home in order that they could go vote.

¶3.     McLain had been estranged from East's daughter and was not supposed to be around her or in East's home. When East opened the front door of his home, McLain was standing in the doorway pointing a 12-gauge shotgun at East's face. East took the gun away from McLain, who eventually left. East did not know how McLain gained entry to the house, but East testified he normally locks the front door. East testified he did not observe whether the door was broken or any other signs of forced entry; he did not even look because his only concern was finding his daughter and grandson to ensure their safety. When asked whether he left the door to his house "wide open," East responded, "[N]ot necessarily, no."

¶4.     Officer Artis Ezell from the Jones County Sheriff's Department testified that he observed signs of forced entry; there were a few tool marks on the door frame, and it looked like the door had been pried open. In contrast, McClain's sister, who is married to East's son and lives adjacent to East's home, testified that she did not notice any signs of forced entry when she entered the home after the burglary.

¶5.     The shotgun McLain pointed at East was kept in a gun cabinet in East's home office, which is located down a hallway, deep within the house. East's daughter originally purchased the gun. Several years prior to the burglary, when McLain and East's daughter

2

needed financial assistance, East gave them money in exchange for the gun.

**ANALYSIS**

¶6.     On appeal, McLain argues that the State failed to present sufficient evidence of whether a "breaking" occurred.  In reviewing the sufficiency of the evidence supporting a guilty verdict, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Warren v. State*, 187 So. 3d 616, 627 (¶30) (Miss. 2016).   The reviewing court "must accept as true all credible evidence consistent with guilt." *Cowart v. State*, 178 So. 3d 651, 666 (¶41) (Miss. 2015).

¶7.     At the close of the State's case-in-chief, defense counsel moved for a directed verdict, challenging the sufficiency of the evidence for burglary of a dwelling, which the circuit court denied.  After trial, McLain's counsel submitted a motion for a new trial where he argued the insufficiency of the evidence on the "breaking" element.  At a hearing on the motion, defense counsel argued exclusively on this issue.  A few days later, the circuit court entered a three-page order denying McLain's motion, finding the evidence was sufficient to prove the "breaking" element.

¶8.     Burglary of a dwelling is defined as "breaking and entering the dwelling house or inner door of such dwelling house of another, whether armed with a deadly weapon or not, and whether there shall be at the time some human being in such dwelling house or not, with intent to commit some crime therein . . . ."  Miss. Code Ann. § 97-17-23(1) (Rev. 2020).  Accordingly, the elements of burglary of a dwelling are "(1) unlawful breaking and entering,

and (2) intent to commit a crime therein." *Ward v. State*, 285 So. 3d 136, 140 (¶16) (Miss. 2019) (quoting *Jackson v. State*, 90 So. 3d 597, 604 (¶27) (Miss. 2012)).

¶9. On the element of "breaking" under Mississippi law, "a breaking is conducted by an act of force, regardless of how slight, necessary to be used in entering a building, such as turning a knob, a slight push to further open a door, or raising a latch." *Foster v. State*, 281 So. 3d 229, 233 (¶11) (Miss. Ct. App. 2019) (quoting *Ladd v. State*, 87 So. 3d 1108, 1114 (¶19) (Miss. Ct. App. 2012)). "To constitute burglary, a 'structure must generally be closed. Otherwise the entry is merely a trespass, not a breaking and a burglary.'" *Id*. "Even if the door was unlocked or if only slight force was needed to gain entry, such entry has been viewed as forcible for the purposes of our burglary statute." *Harris v. State*, 68 So. 3d 754, 757 (¶11) (Miss. Ct. App. 2011) (quoting *Wheeler v. State*, 826 So. 2d 731, 735 (¶12) (Miss. 2002)).

¶10. McLain argues that the State failed to present any evidence that East's home was closed before McLain entered it; therefore, the State failed to prove a "breaking" occurred. He claims there was no evidence that East closed all of the doors and windows before leaving, or even that he was the last person to leave the house. Further, McLain notes that East did not notice any evidence of a forcible entry, and Officer Ezell did not mention in his initial report that he noticed tool marks on the door.

¶11. McLain cites two cases in support of his argument: *Foster*, *supra*, and *Dean v. State*, 295 So. 3d 575 (Miss. Ct. App. 2020). In *Foster*, this Court reversed the defendant's conviction because there was insufficient evidence of a "breaking." *Foster*, 281 So. 3d at

233 (¶12). The defendant claimed he entered the dwelling through an open door; however, there was no evidence presented of the condition of the door at the time of the incident. *Id.* Further, photographic evidence taken later showed an opened solid door and a closed storm door, but there was no proof that the storm door was even there on the date of the incident. *Id.* Similarly, in *Dean*, this Court relied on *Foster* to reverse a conviction for burglary under similar facts because "the State presented no evidence of the condition of the doors on the date of the incident." *Dean*, 295 So. 3d at 578-79 (¶10) (quoting *Foster*, 281 So. 3d at 233 (¶12)). Therefore, we found that the element of "breaking" could not be proved beyond a reasonable doubt. *Id.*

¶12.  Neither of these cases are analogous to this one. Here, the State did present evidence that the door was closed on the date of the incident. East testified upon arrival at his home, he got out of his truck, walked to the door, and opened it. He then saw McClain standing in the doorway with a shotgun pointed at his face. East also testified he normally locks his door, and he denied leaving the door "wide open." Even so, the State does not have to prove the door was secured or that East was the last person to leave the house. There was no testimony that anyone else was in the home, and McLain was not supposed to be there when East returned from the hunting camp.

¶13.  Further, even though it was not in his initial report, Officer Ezell testified that it looked like there were a few tool marks on the door frame and that the door had been pried open. Moreover, tool marks on the door would be circumstantial evidence that the door was closed. Even though McLain's sister testified she did not observe signs of a forced entry,

5

it is the jury's province to determine witness credibility and resolve conflicts in the evidence. *Boone v. State*, 973 So. 2d 237, 243 (¶22) (Miss. 2008) (quoting *Givens v. State*, 967 So. 2d 1, 7 (¶19) (Miss. 2007)). The jury could reasonably find Officer Ezell's testimony more credible than McLain's own sister. Additionally, the jury was instructed on the elements of burglary of a dwelling, the definition of "breaking," and the lesser included offense of trespass to a building.

¶14. As the State notes, *Harris* is analogous to this case. In *Harris*, the defendant argued there was insufficient evidence of a breaking into a shed. *Harris*, 68 So. 3d at 757 (¶10). However, the burglary victim testified that he always kept the door shut, although it may not always be locked. *Id.* at (¶12). We found that evidence the door is usually shut was sufficient to prove the "breaking" element under *Wheeler*, *supra*, and affirmed the conviction. *Id.* at (¶¶11, 13). Likewise, here East testified that he usually kept the door to his home closed, which is sufficient to prove McLain's entry into the home was a "breaking."

¶15. After viewing the evidence in the light most favorable to the prosecution, we conclude that a rational trier of fact could have found the "breaking" element was proved beyond a reasonable doubt. East's and Officer Ezell's testimony are sufficient to show the door was closed, and there was also evidence of a forced entry. Accordingly, we affirm McLain's conviction and sentence.

¶16. **AFFIRMED.**

**CARLTON AND WILSON, P.JJ., GREENLEE, WESTBROOKS, McDONALD, LAWRENCE, McCARTY, SMITH AND EMFINGER, JJ., CONCUR.**